346 So.2d 598 (1977)
Leonard Robert BOYETTE, Petitioner,
v.
STATE of Florida PROFESSIONAL PRACTICES COUNCIL, Respondent.
No. DD-465.
District Court of Appeal of Florida, First District.
May 25, 1977.
Rivers Buford, Jr., Tallahassee, and Phillip K. Beck, Lakeland, for petitioner.
Thomas W. Lager and Ronald C. LaFace, of LaFace & Baggett, Tallahassee, for respondent.
ERVIN, Judge.
This is a petition for review of an order of the State Board of Education revoking the teaching certificate of the petitioner, Leonard Robert Boyette, for a period of five years. A petition for revocation of Boyette's certificate was filed by the Chairman of the Professional Practices Council in which it was alleged that during the 1973-74 school years, petitioner conducted himself in a manner "which seriously reduces his effectiveness as an employee of the school board." Following a hearing held before a committee of the PPC, the committee entered its findings of fact, conclusions and recommendations. Its sole finding of fact was:
"During the 1973-74 school year Leonard Robert Boyette did commit forcible rape on a fellow school teacher who was a virgin, and thereby conducted himself in a manner which seriously reduces his effectiveness as an employee of the school board."
Boyette then filed his objection to the committee's recommendation before the State Board of Education, which entered an order *599 directing that a hearing examiner be appointed from the Department of Administration to hear Boyette's exceptions and promulgate recommendations to the Board. After hearing argument by counsel and reviewing the record, the hearing officer made his report and recommendations on Boyette's objections. He made extensive findings of fact and concluded that the record of the proceeding did not contain competent, substantial evidence to support critical findings of fact as set forth in paragraph three of the PPC's recommended order. It was thereupon recommended that the hearing committee's findings of fact, conclusions and recommendations not be accepted and that a final order be entered dismissing the charges for failure of proof. The matter then came before the State Board of Education which, by a vote of four of the five members present, rejected the report and recommendations of the hearing examiner and revoked Boyette's certificate for a period of five years.
Boyette was an assistant football and basketball coach, head track coach and instructor of physical education at Crystal River High School. He began there in the fall of 1973 and was granted a continuing contract in April, 1974. In December, 1973, he was involved in the incident which led to the revocation proceeding. A female elementary school teacher in nearby Inverness agreed to go on a blind date with Boyette. They went to his trailer for dinner. After dinner they sat on the couch in the living room and began kissing. At this point the testimony of Boyette and the teacher conflicts. Boyette testified that while his companion was at first reluctant to go with him into his bedroom, she nevertheless went freely and without resistance. There she engaged in intercourse with him freely and voluntarily and without the exertion of any force on his part, although he admitted to being persistent. The complainant, however, testified that Boyette pulled her off the living room couch and down the hall to the bedroom, and the more she resisted his advances, the more hostile and aggressive he became. It is significant to note, however, as the hearing officer observed, that the victim testified Boyette did not threaten her either verbally or with a weapon; however she found his demeanor threatening. She made a phone call from Boyette's trailer to her roommate but said nothing of the incident. Following the phone call they engaged in intercourse again.
After being taken home by Boyette, she immediately told her roommate what had transpired and went to bed. No report was ever made to the police of the incident. Nor did she report the incident to the State Board of Education. The following October she was approached by a representative of the PPC and then gave her information concerning the event.
The hearing officer, after examining the transcription of the testimony before the PPC, concluded that it had not been established by a preponderance of the evidence before the PPC that Boyette committed the criminal offense of sexual battery as defined by the applicable Florida Statutes.
His recommendation to the Board stated that since there was no definition of the phrase "forcible sex" of which Boyette was found "guilty," it was necessary to refer to the criminal statutes[1] relating to sexual battery to determine whether such an offense occurred. He concluded, after referring to the statutes, the record did not establish that Boyette exerted such force as to put the prosecutrix in such fear that she was compelled to submit, nor did it establish that he threatened to use force or violence likely to cause serious personal injury to her, thereby forcing her to submit.
We agree with the hearing officer's conclusions. While the courts will determine whether there is sufficient evidence to support administrative action *600 which is attacked, and will determine the legal effect of the evidence, they will not ordinarily review conflicting evidence. The question of the weight of the evidence is usually one for the administrative agency and not for the courts, even though the court may have reached a different conclusion on the same testimony. E.g., Hammond v. Curry, 153 Fla. 245, 14 So.2d 390 (1943); Butler v. Carter, 123 So.2d 313 (Fla. 1960); Florida State Board of Dental Examiners v. Feinglass, 166 So.2d 686 (Fla. 3rd DCA 1964). Still, our responsibility on review is to determine whether there is substantial competent evidence to sustain the agency's action. Since the conduct complained of was "forcible rape", reference to criminal cases where appellate courts have found it necessary to weigh the sufficiency of the evidence involving the offense of sexual battery is instructive.
In O'Bryan v. State, 324 So.2d 713 (Fla. 1st DCA 1976), this court reversed a conviction of rape when the evidence failed to show that any weapons were used, no threats were made and there was no evidence of any injury. We noted that in Bailey v. State, 76 Fla. 213, 79 So. 730 (1918), a conviction for rape was reversed even though the victim was seized by her arm, thrown on the bed and choked, where the evidence failed to show that she had made little or no resistance to the defendant's advances. We concluded in O'Bryan:
"The offense of forcible rape is never established where the evidence presented by the state fails to show that the act was accomplished by force and against the will of the victim, but only shows that she protested. Bowden v. State, 152 Fla. 715, 12 So.2d 887 (1943)." 324 So.2d at 715.
In the recent opinion of Tibbs v. State, 337 So.2d 788 (Fla. 1976), the Supreme Court reversed a conviction for rape and murder even though the victim of the rape identified Tibbs as the perpetrator. The court noted that while there need be no corroboration of the victim's testimony in a rape case, nevertheless such testimony must be carefully scrutinized.
The Supreme Court quoted the following language from McNeil v. State, 104 Fla. 360, 139 So. 791, 792 (1932), as to the responsibility of an appellate court's review of the weight of the evidence:
"`While the weight of the evidence and the credibility of the witnesses is ordinarily a matter which is exclusively within the province of the jury to decide, and this court will as a rule not reverse a judgment based upon a verdict returned by the jury and approved by the trial judge, when there is substantial evidence to support the verdict rendered, it is also the rule that the evidence relied on to have this effect must be substantial in character.'" 337 So.2d at 791.
True, the above cases involved situations where a defendant's liberty was at stake. However courts should be no less solicitous of setting aside agency action where an individual's livelihood is jeopardized as a result of insubstantial or incompetent evidence.
In addition to requiring substantial and competent proof in support of the conduct charged, Section 231.28(1) also requires such proof supporting the conclusion that the commission of such conduct seriously reduced Boyette's effectiveness as an employee of the school board. Three witnesses testified that Boyette's effectiveness as a school teacher had been seriously reduced as a result of the incident. Two teachers, both close personal friends of the prosecutrix, who received the information directly from her, testified that they could not work with Boyette again. One of the two teachers was a roommate of the prosecutrix.
Charles Dean, administrative assistant to the superintendent of schools in Citrus County, was accepted as an expert witness on the subject of personal relationships of teachers and their ability to get along with others. A hypothetical question asked was to assume that a male teacher forcibly had intercourse with a female teacher against her will; that two other teachers in the same school system were told of the incident, as a result would such an incident reduce the effectiveness of the male teacher *601 in the school system. Mr. Dean replied he thought it would have an effect. On cross-examination he was asked whether, notwithstanding the occurrence of the reported incident, the male teacher continued his performance as a school teacher and his performance was evaluated superior in every category and as a result thereof, the teacher was placed on continuing contract, would such facts alter his opinion. Mr. Dean qualified his answer by stating that the person's effectiveness as a classroom teacher would not be reduced. On recross-examination Mr. Dean stated that the incident was community knowledge although he did not state when it did become widely known.
Earl Bramblett, head coach and athletic director at Crystal River High School, first learned of the incident when he was subpoenaed to attend a deposition in April, 1975. Later in August, 1975, he was informed that Mr. Boyette would not return as assistant coach. He stated that Boyette did an outstanding job during the 1973-74 school year, including the months following December, 1973. He joined in a recommendation that Boyette be placed on continuing contract.
William L. Hilliard, former principal at Crystal River High School, had no knowledge of the incident prior to his leaving his position in July, 1974. He recommended to the superintendent of schools that Boyette be placed on continuing contract. This recommendation was signed by the superintendent on March 8, 1974. On April 9, 1974, Hilliard evaluated Boyette superior in every category in the Citrus County teacher evaluation form, including the categories "responsible and dependable" and "morally upright". On April 23, 1974, the Citrus County School Board granted him continuing contract.
We can only conclude from this record that the incident became community knowledge after an investigation had been launched by the PPC. Thus the agency's action made it community knowledge and appears to be the sole motivating force in reducing Boyette's effectiveness as a teacher. We cannot assume that the Citrus County School Board would have voted to place Boyette on continuing contract more than four months after the occurrence of the incident if indeed it was then community knowledge.
Here the second element of the charge, i.e., that Boyette's effectiveness as a school teacher was seriously reduced as a result of the conduct complained of, was based almost entirely by the agency upon opinion testimony. As we recently recognized in McDonald v. Department of Banking and Finance, 346 So.2d 569 (Fla. 1st DCA 1977) where the ultimate facts of a hearing officer's findings are dependent upon matters of opinion, "a reviewing court will give correspondingly less weight to the hearing officer's findings in determining the substantiality of evidence supporting the agency's substituted findings." McDonald v. Department of Banking and Finance, supra, 346 So.2d 569, p. 579. This rule applies with equal force here where the PPC made certain findings which were recommended by a hearing officer to be rejected, but were accepted by the Board.
It was the responsibility of the agency, acting as trier of facts, to determine whether the complainant's charge was supported by the necessary quantum of proof as to all the elements of the charge. While we may not substitute our judgment for that of the agency as to the weight of evidence on any disputed finding of fact, Section 120.68(10), nevertheless it is clearly our responsibility to determine whether the findings of fact and conclusions of law of the agency are supported by competent substantial evidence and to set aside or remand action which is not so supported.
For the reasons stated we have determined that the agency order revoking Boyette's certificate was not supported by competent substantial evidence. Accordingly the order of the Board of Education revoking petitioner's certificate is quashed with directions that the hearing officer's recommendation that the final order be entered *602 dismissing the charges for failure of proof be substituted therefor.
BOYER, C.J., concurs.
MILLS, J., dissenting.
MILLS, Judge, dissenting:
I dissent. I would deny the petitioner's petition for review because, in my judgment, the agency order revoking the petitioner's teaching certificate is supported by competent substantial evidence which is reflected in the majority opinion.
NOTES
[1] § 794.01(2), Fla. Stat. (1973), which provides that whoever ravishes a person over 11 years of age by force is guilty of a life felony. § 794.011(4)(b), Fla. Stat. (1975) provides that a sexual battery occurs when a person commits a battery upon another person without such person's consent and coerces the victim to submit by threatening to use force or violence likely to cause serious personal injury.