455 So.2d 1057 (1984)
Pamela SHERBURNE, Appellant,
v.
SCHOOL BOARD OF SUWANNEE COUNTY, Florida, Appellee.
No. AP-288.
District Court of Appeal of Florida, First District.
June 7, 1984.
Rehearing Denied August 23, 1984.
*1058 Elizabeth L. White and William J. Sheppard of Law Offices of William J. Sheppard, P.A., Jacksonville, for appellant.
William R. Slaughter, II of Slaughter & Slaughter, Live Oak, for appellee.
SMITH, Judge.
Ms. Sherburne appeals from an order of the Suwannee County School Board terminating her employment on the grounds that she lacked good moral character. We reverse.
Ms. Sherburne, a 1974 college graduate, applied for and received a one-year annual contract to teach Spanish at Suwannee County High School during the school year 1975-1976. Her annual contract was renewed for the 1976-1977 school year, and again for the 1977-1978 year. At the completion of the 1977-1978 school year, the Suwannee County School Superintendent recommended that Ms. Sherburne receive a continuing contract. The School Board, however, declined to issue a continuing contract, but reissued an annual contract, notifying appellant of its action by mail, but failing to specify any reasons for its action. Upon inquiry, appellant was advised by the Superintendent that a Board member had recommended removal of her name from the list of those eligible for continuing contract because of her "relationship" with a male acquaintance, Bob Palmer. At the next meeting of the Board the Superintendent *1059 again recommended appellant for continuing contract status. The Board again declined to award a continuing contract, and instead withdrew its previous offer of an annual contract. Appellant's request for a hearing was denied, but a hearing was subsequently held pursuant to order of a United States District Court.
The Board's notice of hearing charged that during the course of the 1977-1978 school year appellant cohabitated at various times with an adult male to whom she was not married, and to whom she was not related by blood or marriage, and that she permitted this same male to visit her classroom in the "direct or indirect" presence of students and faculty members during times when she should have been teaching class. The notice further charged that she had been warned about her behavior but persisted in it, and concluded that this conduct demonstrated an absence of good moral character, set a bad example for and had a harmful effect upon her students. At the conclusion of the hearing, the Board found that the cohabitation referred to existed for a period of approximately one month, that it was well-known by her students and was a subject of frequent discussion among her students, and that appellant during the years 1977 and 1978 permitted and encouraged the adult male with whom she was cohabitating to visit her classroom in the direct or indirect presence of students and other faculty members. The Board further found that knowledge of appellant's relationship was so well-known within the community to both students and the public at large that "some parents" made complaints to the school principal, and that her conduct set a bad example for students because of their age, impressionability, and state of development, so as to have a present and potentially harmful effect with regard to the formation of student values and attitudes upon morality, family, lifestyle and character. The Board's order further recited that appellant was warned that her conduct was unacceptable to the School Board and that she should discontinue such conduct, but notwithstanding, she continued her cohabitation. The Board also found that while the cohabitation of appellant "in and of itself" with an adult male to whom she was not married "may not be immoral to some segments of American population," it is "not an indicator of the high moral standards required by law of a teacher." From the foregoing, the Board concluded that appellant lacked "good moral character," "good judgment," that she had failed "to conform to the moral standards established by the vast majority of teachers employed by the School Board of Suwannee County," and that her cohabitation and public knowledge thereof together with the effect upon her students and potential students "is personal conduct which seriously reduces her effectiveness as an employee of the School Board."
The evidence disclosed that appellant lived with Mr. Palmer in his house trailer during January of 1978 while her trailer was being repaired. As soon as her trailer was habitable she moved out of Palmer's trailer. At the time of the April, 1978, School Board meeting at which she was first denied a continuing contract, appellant was living in her own trailer. She testified that she sometimes spent the night at Palmer's trailer, and that he sometimes spent the night at her trailer.
Frank Stankunas, Superintendent of Schools for Suwannee County, called as a Board's witness, was the principal of Suwannee High School during the 1977-1978 school year, and the assistant principal during the previous years. Among his duties was the evaluation of teachers. He testified that he never had any complaints or comments from the students concerning appellant and her relationship with Palmer. There were no discipline problems among appellant's students, and he was of the opinion that she was an excellent teacher. The only evidence that there were parental complaints came from Mr. Stankunas, who admitted that there were a couple of inquiries concerning Bob Palmer's presence on the school grounds. He explained, however, that at his request Palmer had volunteered, free of charge, to construct a tennis *1060 court and give tennis instructions, and that Palmer also helped, again free of charge, in constructing facilities for the school's reading laboratory. Stankunas was at no time advised that Palmer had visited appellant's classroom, nor that there was any improper conduct on the part of Palmer or appellant during his presence at the school.
The Board produced the audio deposition of one former student, a 1977 graduate, in which she stated that she saw Bob Palmer around the campus at times, and in appellant's classroom on one occasion. She also said that she had discussed with other students the relationship between appellant and Palmer, that they were living together, and that she had gone to appellant's home on Friday and Saturday night dates along with other students "to see if we could see them together." There was no testimony of what, if anything, she or the other students ever saw. The Board also heard the testimony of an expert witness psychologist who opined that granting a continuing contract to a very efficient and popular teacher concerning whom it was commonly known that she lived with a member of the opposite sex without benefit of marriage "would impact upon the student body in fairly significant ways, or potentially so." No parent or teacher testified, and no Board's witness was able to testify that appellant's relationship with Palmer became a matter of "common knowledge" before the Board's denial of continuing contract status resulted in newspaper publicity. The Board produced no evidence that appellant had been "warned" about her alleged conduct.
Former students testified in behalf of appellant that they never saw any inappropriate conduct between appellant and Palmer. They testified that they learned of her relationship with Palmer either through the newspapers or from adults, but that the relationship was not commonly discussed among the students. Appellant produced an expert witness on moral theory who testified that while there is extensive literature on sexual behavior, there is no argument among contemporary moral theorists that non-marital sex is per se immoral, and another expert testified to the steady increase over the years in public acceptance of pre-marital sexual activity. A third expert, a psychologist, testified that there is no indication in the psychological literature that appellant's behavior would have a harmful effect on students.
Our sister court, in Von Stephens v. School Board of Sarasota County, 338 So.2d 890 (Fla. 2nd DCA 1976), emphatically spelled out the rights of a nominee for continuing contract status under Section 230.23(5), Florida Statutes (1973). The court stated that nomination by the School Superintendent "mandates appointment by the Board absent good cause." Id. at 894. Further, nomination by the Superintendent "is final unless the Board finds that the nominee is morally or professionally disqualified." Id. at 895. This court has interpreted the law in a similar fashion, holding that a nominee has an "earned status" entitling the nominee to a hearing, and requiring a statement of good cause for the Board's rejection. McDowell v. School Board of Suwannee County, 365 So.2d 454, 456 (Fla. 1st DCA 1978); see also Gainey v. School Board of Liberty County, 387 So.2d 1023 (Fla. 1st DCA 1980). Very recently, in Foreman v. Columbia County School Board, 429 So.2d 383 (Fla. 1st DCA 1983), we incorporated much of the significant language of Von Stephens in our opinion holding that good cause for rejection of a nominee had not been shown. Even more recently, we again relied upon Von Stephens in Greene v. School Board of Hamilton County, 444 So.2d 500 (Fla. 1984), in deciding that where the School Superintendent recommended employment of an administrative employee for one year, the Board had no authority to award a two-year contract.
"Good cause" is not statutorily defined. However, the Von Stephens court indicated, and we agree, so far as concerns the qualifications of teachers, that the term may be equated with a showing of "failure *1061 ... to meet the criteria of Chapter 231, Fla. Stat." 338 So.2d at 894. Section 231.02, Florida Statutes, requires that a person shall be of "good moral character" in order to be eligible for appointment to a position in the district school system. Chapter 231 contains no definition of "good moral character." Nor does it define "immorality" as used in Section 231.36(6), Florida Statutes, which provides that any member of the instructional staff may be suspended or dismissed at any time during the school year for "immorality, misconduct in office, incompetency, gross insubordination, willful neglect of duty, drunkenness, or conviction of any crime involving moral turpitude." "Immorality" is defined by Rule 6B-4.09(2), Florida Administrative Code:
(2) Immorality is defined as conduct that is inconsistent with the standards of public conscience and good morals. It is conduct sufficiently notorious to bring the individual concerned or the educational profession into public disgrace or disrespect and impair the individual's service in the community.
In proceedings such as this, involving the loss of a valuable professional position and dependent upon the application of such broad general terms as "immorality," this court has held that "the critical matters in issue must be shown by evidence which is indubitably as `substantial' as the consequences." Bowling v. Department of Insurance, 394 So.2d 165, 172 (Fla. 1st DCA 1981). And while we recognize that the immorality of pre-marital sex is not considered open to debate in some quarters, and this opinion should not be read as condoning such activity, we can find no substantial evidence satisfying the requirements of the above rule that appellant's relationship with Palmer met the test of "good cause" justifying denial of her continuing contract rights.
First, it must be noted that the Board did not offer any direct proof of improper, pre-marital sexual conduct on appellant's part. One's presence as an overnight or even month-long guest in the residence of another of the opposite sex provides nothing beyond supposition to reflect upon that person's "morality" that is self-evidently the basis of the Board's order. See, Fisher v. Snyder, 476 F.2d 375 (8th Cir.1973). More importantly, in contrast to the Board's expert's speculation that such activity could have an adverse effect upon the students, the record is devoid of evidence that any conduct by appellant had such an effect on her students, or that her effectiveness as a teacher had been impaired in any respect. In truth, the Board's own witness, appellant's former assistant principal and principal, the one witness best qualified to observe appellant during her three-year tenure at the school, attested to appellant's excellence as a teacher and the total absence of any parental or other complaint regarding any adverse effect upon her students. Furthermore, there is nothing in the record to suggest that appellant might or did attempt to inject her views regarding sexual morality into the classroom or into her private discussions with students. Additionally, the Board's evidence fell far short of establishing that appellant's relationship with Palmer was "common knowledge" prior to the time the matter was publicized by the Board's denial of her continuing contract and the attendent litigation spawned by such denial. Certainly, the Board could not justify its granting of an annual contract, withdrawal of that contract, and the denial of a continuing contract, upon the ground that the relationship was "community knowledge" where that knowledge resulted after-the-fact from the Board's own activities. See Boyette v. State Professional Practices Counsel, 346 So.2d 598 (Fla. 1st DCA 1977); Baker v. School Board of Marion County, 450 So.2d 1194 (Fla. 5th DCA 1984), opinion filed May 10, 1984. The Board's action in favoring appellant with a teaching contract for three years, and its tender of an annual contract for the fourth year (subsequent to the events which it now advances as disqualifying her to teach), strongly suggests that in later denying appellant a continuing contract, or even employment on an annual contract, the Board was concerned more *1062 with what it considered to be an affront to its members' own personal moral standards, than with appellant's possible adverse effects on the students.
Finally, it is fairly obvious from the record of the hearing itself, as well as from the Board's conclusion that appellant "failed to conform to the moral standards established by the vast majority of teachers employed by the School Board of Suwannee County," that the Board deemed it its responsibility to reach a decision based upon the application of subjective "community" standards, an assumption found objectionable in Von Stephens, 338 So.2d at 894. We emphasize that here there is no evidence of illicit sexual conduct on or about the school premises, or during any school activities or functions away from the school; nor is there evidence of any conduct involving a student, directly or indirectly, or any open lewdness or licentious behavior.
We are led to conclude from our examination of the authorities on the subject that in the absence of specific, valid, statutory directives, the appropriate standard to be applied is that private, off-campus conduct ostensibly involving a consensual sexual relationship between a teacher and an adult of the opposite sex cannot, in and of itself, provide "good cause" for a school board's rejection of a teacher nominated for employment by the superintendent unless it is shown that such conduct adversely affects the ability to teach. See, generally, annotation, Sexual Conduct as Ground for Dismissal of Teacher or Denial or Revocation of Teaching Certificate, 78 ALR3rd 19. Since the evidence here does not meet this standard, the order appealed from must be set aside.
Reversed and remanded for further proceedings consistent with this opinion.
JOANOS, J., concurs.
NIMMONS, J., dissents without opinion.

ON MOTION FOR REHEARING OR CLARIFICATION
SMITH, Judge.
Appellee seeks clarification of the dispositional portion of our opinion, which reversed and remanded the cause "for further proceedings consistent with this opinion." By this language, this court did not intend to invite appellee to conduct another evidentiary hearing to relitigate appellant's teaching credentials. Appellant's entitlement to award of a continuing contract has already been fully litigated, and the board's denial of such contract has been reversed on appeal. "Further proceedings" in this cause, as ordered by this court, means that appellant is entitled to reinstatement to her teaching position on a continuing contract status, and reimbursement for any economic loss sustained by reason of the board's wrongful denial of such contract, including expenses incurred in these proceedings. See, Gainey v. School Board of Liberty County, 387 So.2d 1023 (Fla. 1st DCA 1980).
Appellee's motion for rehearing raises no issues not already considered and rejected in our original disposition of this case, and is hereby DENIED.
JOANOS, J., concurs.
NIMMONS, J., dissents.
NIMMONS, Judge, dissenting.
I dissent from that portion of the opinion denying the appellee's motion for rehearing.