455 So.2d 394 (1984)
Donald G. BRADDOCK, Appellant,
v.
SCHOOL BOARD OF NASSAU COUNTY, Florida, and Craig Marsh, Superintendent of Schools, Appellee.
No. AU-128.
District Court of Appeal of Florida, First District.
June 19, 1984.
Rehearing Denied August 22, 1984.
*395 Philip J. Padovano, Tallahassee, for appellant.
Brian T. Hayes, Monticello, for appellee.
JOANOS, Judge.
Braddock, a continuing contract teacher and coach, appeals from an order of dismissal of the Nassau County School Board. The stated basis for the dismissal was that Braddock violated the provisions of Florida Administrative Code Rule 6B-4.09(3), which is defined as a violation of the Code of Ethics of the Education Profession, Department of Education, in that his conduct "represented not only poor judgment ... but such conduct and behavior was [sic] so serious as to impair his effectiveness as a teacher in the Nassau County school system." The issue with which we are here concerned is whether there is in the record competent substantial evidence to support the Board's finding that Braddock's conduct and behavior were of such character as to result in a diminution of his effectiveness as a teacher. We conclude that there is not.
On April 28, 1983, Superintendent Marsh suspended Braddock with pay from his position as teacher and coach at Fernandina Beach High School. A hearing was held before the school board on May 12, 1983, at which time Braddock's suspension was confirmed pending the outcome of a final hearing. On May 23, 1983, pursuant to Section 231.36, Florida Statutes, Braddock was formally charged with three specific instances of misconduct:
(1) that at approximately 2:00 a.m. on March 11, 1983, Braddock met and spent time with one of his minor female students;
(2) that during the spring 1983 track season, following a track meet, Braddock left the same minor female student at a convenience store while he transported other students to their home  Braddock then returned and picked up the minor female student who rode alone with him to her home; and
(3) that on April 27, 1983, the same student rode alone with Braddock to Fernandina Beach where they spent the afternoon together, not accompanied by other persons.
Testimony at the final hearing demonstrated that each of these meetings was arranged by the student  who was infatuated with Braddock. On March 11, 1983, the student called Braddock from a friend's mobile home, urging him to come and talk to her. She was extremely upset because her brother had been injured in a motorcycle accident and had to be airlifted to a Jacksonville hospital. (Sometime prior to these events, the student's mother had been killed in an auto accident.) The student's parents (father and stepmother) were at the hospital with her brother. The student called Braddock three times in close succession, urging him to come because she needed to talk to someone. Two witnesses, the student's friend and Braddock's roommate, testified that Braddock was reluctant to respond to the student's request. Finally, after the third phone call, Braddock drove to the mobile home where the student was spending the night. The student met him outside, and they rode and talked in Braddock's car for approximately thirty minutes. The testimony is not clear concerning the exact time Braddock left the student. At her direction, Braddock took her to a pay phone in the area of the mobile home. Braddock left her there, after she told him that her friend would pick her up. The student testified that she did not really call her friend because she needed time alone to think things through. After walking for a while, she returned to the mobile home, arriving there at approximately 4:00 a.m.
The two other incidents listed in the formal charge occurred when Braddock gave the student a ride home from a track meet, and when the student called Braddock from school and asked him to take her home because she had missed her ride. With regard to the track meet episode, Braddock was transporting four or five students. He stopped at a convenience store and the student got out of the car  telling Braddock *396 she would call someone to pick her up. Braddock took the other students home, then stopped by the convenience store on the way back. The student was still there, so Braddock offered to drive her home. The final incident concerned a phone call from the student, who was still at school, to Braddock. She asked him for a ride home. On that day, Braddock agreed to take her home, but told her he had errands to run first. One of those errands required a trip to the beach to deliver a message to Braddock's roommate.
Braddock was a track coach, and most of his contacts with this student arose as a consequence of her membership on the track team. This student and other members of the team were permitted by their parents to participate in track only if transportation home after track events and practices were provided. The record reflects that this student, and others, turned to Braddock for counseling with personal problems. The record further reflects no evidence of sexual misconduct in Braddock's meetings with this student, nor did the Superintendent or the Board make any such allegation.
After hearing all the testimony, the Board decided that the facts would not support the definition of misconduct in Code of Ethics Rule 6B-1.02(2), which provides:
In fulfilling his or her obligations to the student, the educator (c) shall make reasonable effort to protect the student from conditions harmful to learning or to health and safety.
* * * * * *
(f) shall not use professional relationships with students for private advantages.
Instead, the Board decided to define "misconduct" as "activity or behavior that is so serious that it impairs the effectiveness of the individual in the school system." The Final Order of Dismissal incorporates the Board-drafted definition of misconduct, with the comment that this definition is "based upon Florida Administrative Code Chapter 6B-4.09(3) and Rules of the Department of Education, Educational Standards Commission, Chapter 6B-1, Code of Ethics ..."
There is no question that the Board based its action of dismissal on proper grounds. Still, our responsibility on review of administrative action is to determine whether there is in the record competent substantial evidence to support the agency's action. Section 120.68(10), Florida Statutes (1983); Boyette v. State Professional Practices Council, 346 So.2d 598, 600 (Fla. 1st DCA 1977). At the hearing, the Board found that the facts would not support an allegation that Braddock's misconduct in office constituted a use of his professional relationship with the student for private advantage. The Board then defined misconduct in office as "behavior so serious as to impair the effectiveness of the individual in the school system." Despite this effort to conform the ground for dismissal to the evidence, no testimony was offered that suggested that Braddock's effectiveness as a teacher and coach had been impaired in any way. While we must agree that this teacher's conduct demonstrated poor judgment on his part, the Board made no finding that Braddock's effectiveness with the school system had been impaired by virtue of the three incidents with which he was charged. As this court noted in Wray v. Dept. of Prof. Regulation, 435 So.2d 312, 315 (Fla. 1st DCA 1983), even if the effectiveness issue had been properly charged as a violation, there still must be competent substantial evidence on that issue in the record to support a finding of guilty. Here, there was no evidence or finding that Braddock's effectiveness as a teacher and coach was diminished or impaired in any way.
For the foregoing reasons we have determined that the School Board's order dismissing Braddock was not supported by competent substantial evidence. Therefore, the order dismissing Braddock is REVERSED.
BOOTH and SHIVERS, JJ., concur.

*397 ON MOTION FOR REHEARING
JOANOS, Judge.
Appellees have petitioned for rehearing pursuant to Florida Rules of Appellate Procedure 9.330(a), and urge that the court may have overlooked the following:
(1) that section 231.36(6), Florida Statutes, was the basis for Braddock's dismissal and not the corresponding Rule, and
(2) that Superintendent Marsh, when asked whether in his opinion the conduct complained of impaired Braddock's effectiveness as a teacher, replied 
"I believe it is serious enough to impair his effectiveness as a teacher in the system, sir."
As to point one, counsel for appellant correctly points out that in the formal statement of charges, the School Board specifically rejected as ground for dismissal any charge that appellant had exploited a professional relationship with a student for personal gain or advantage, finding no competent substantial evidence to support such a charge. Instead, the Board adopted the charge that appellant's misconduct was so serious that it impaired his effectiveness as a teacher. The panel specifically addressed this point, finding the impaired effectiveness charge to be a proper ground for dismissal. The panel's opinion did not overlook the statutory basis for dismissal, but the panel's ruling necessarily addressed the formal ground adopted by the Board upon which it based its dismissal.
As to point two, Superintendent Marsh's opinion regarding the alleged impaired effectiveness of appellant as a teacher does not, without more, constitute competent substantial evidence to support dismissal. This testimony was not overlooked, but was not specifically addressed in the opinion for this reason.
Superintendent Marsh was properly qualified as an expert. During the hearing, Superintendent Marsh was asked:
Do you have an opinion upon your knowledge of both the code and the criteria as to whether or not the conduct of Mr. Braddock as related to you, if true, so seriously impairs  is a violation so serious to impair his effectiveness within the school system?
The reply was:
I believe it is serious enough to impair his effectiveness as a teacher in the system, sir. (e.s.)
During cross examination on this statement, Superintendent Marsh was asked what appellant had violated in the Code of Ethics. What evolved was that Superintendent Marsh's charge of misconduct was based on his opinion that appellant took advantage of the professional relationship. This definition of misconduct was specifically rejected by the Board and is so noted in the panel's opinion.
In Arkin Construction Company v. Simpkins, 99 So.2d 557, 561 (Fla. 1957), the court said:
It is elementary that the conclusion or opinion of an expert witness based on facts or inferences not supported by the evidence in a cause has no evidential value. It is equally well settled that the basis for a conclusion cannot be deduced or inferred from the conclusion itself. The opinion of the expert cannot constitute proof of the existence of the facts necessary to the support of the opinion. (e.s.)
Accord: R.P. Hewitt & Associates of Fla. v. McKimie, 416 So.2d 1230, 1232 n. 1 (Fla. 1st DCA 1982); Victoria Hospital v. Perez, 395 So.2d 1165, 1167 (Fla. 1st DCA 1981); D'Avila, Inc. v. Mesa, 381 So.2d 1172, 1173 (Fla. 1st DCA 1980). All of the cited cases are workers' compensation cases, but the principle regarding expert testimony is applicable in any proceeding involving an expert witness.
Superintendent Marsh's opinion was not phrased as a conclusion, i.e., he stated the conduct is serious enough to impair effectiveness. He did not state that in fact appellant's effectiveness had been impaired. On cross examination an expert is required to specify the facts or data upon which he bases his opinion. 24 Fla.Jur.2d Evidence & Witnesses § 667 (1981). Superintendent *398 Marsh, on cross examination, testified that in his opinion appellant took advantage of the professional relationship. The Board specifically found that the evidence did not support a charge of exploitation of the professional relationship. Since the Board as trier of fact expressly rejected the facts relied upon by Superintendent Marsh to support his opinion that appellant's conduct was serious enough to impair his effectiveness, Superintendent Marsh's opinion has no evidential value. The panel did not overlook any evidence  rather, there was a finding of no competent substantial evidence to support the dismissal. Since the basis for Superintendent Marsh's opinion was rejected by the Board, we deny the Petition for Rehearing. The court did not overlook the points raised by appellees. These points were considered by the panel, although they were not addressed with particularity in the opinion.
Appellees' Petition for Rehearing is DENIED.
BOOTH and SHIVERS, JJ., concur.