520 So.2d 294 (1988)
Warren L. SPURLIN, Appellant,
v.
The SCHOOL BOARD OF SARASOTA COUNTY, Florida, Appellee.
No. 87-721.
District Court of Appeal of Florida, Second District.
January 8, 1988.
Rehearing Denied February 22, 1988.
*295 Carol A. Masio and Charles J. Pratt, Jr., of McGuire and Parry, Bradenton, for appellant.
A. Lamar Matthews, Jr. and Theodore C. Eastmore of Williams, Parker, Harrison, Dietz & Getzen, Sarasota, for appellee.
FRANK, Judge.
Among our reasons for writing in this instance is the eradication of any uncertainty as to the meaning of our opinion in Von Stephens v. School Board of Sarasota County, 338 So.2d 890 (Fla. 2d DCA 1976). We, of course, adhere to Von Stephens.
The facts we deem necessary to our goal are summarized as follows: Spurlin was employed by the School Board in an administrative capacity from 1978 to 1985. From a point following August 1, 1985, until December 1, 1985, when Dr. Fowler was appointed superintendent, Spurlin acted as the interim superintendent. Following Dr. Fowler's appointment, he recommended to the School Board that Spurlin's contract as the deputy superintendent be extended for one year. The School Board rejected Fowler's recommendation for reasons associated with Spurlin's past performance of duties and his conduct after learning that he was not a finalist in the process which led to the appointment of Dr. Fowler. Detailing the reasons relied upon by the School Board in reaching its judgment is not essential to our decision. As a result of the School Board's action, Spurlin requested and was accorded a formal hearing pursuant to section 120.57(2), Florida Statutes (1986).
The hearing officer issued a recommended order finding that Spurlin had committed improper acts, but he concluded as a matter of law that the School Board did not have "good cause" to reject Fowler's recommendation. See § 230.23(5), Fla. Stat. (1986). The hearing officer's conclusion resulted from his view that the element of "good cause," referred to in section 230.23(5), was to be measured by the vernacularly denominated "seven deadly sins" found in section 231.36(4)(c), i.e., immorality, misconduct in office, incompetency, gross insubordination, willful neglect of duty, drunkenness, or conviction of any crime involving mortal turpitude. In its final order, the school board adopted the hearing officer's findings of fact but disagreed with the conclusion of law, as it was entitled to do, Siess v. Department of Health & Rehabilitative Services, 468 So.2d 478 (Fla. 2d DCA 1985), that the *296 existence of "good cause" is to be determined within the seven factors enumerated in section 231.36(4)(c). We find that competent substantial evidence supports the school board's final order and we affirm.
The primary underpinning for Spurlin's current contentions is our decision in Von Stephens where the central question, answered affirmatively, was whether an administrator at the moment when recommended by the superintendent for appointment to a specific principalship acquired a property interest in that position clothing him with a right to procedural due process upon the school board's rejection of the recommendation. A subsidiary matter in Von Stephens was whether the school board satisfied the requirement contained in section 230.23(5) that the refusal to follow the recommendation be supported by "good cause." That question was left unresolved subject to the conduct of a hearing. 338 So.2d at 895. Von Stephens does not attempt to define "good cause" within any boundary. Spurlin would have us adopt a construction of the pertinent statutes to require that "good cause" be found only within the "seven deadly sins." His theory begins with the language at section 230.23(5) which restrictively injects school boards into personnel matters "subject to the requirements of Chapter 231." It is from that reference to chapter 231 that he claims "good cause" can derive only from the seven deadly sins. Spurlin reads too much into Von Stephens and the appertaining statutory provisions.
The "seven deadly sins" are not statutorily identified as the criteria for measuring "good cause;" they are expressly applicable to and govern the suspension or dismissal of personnel holding positions pursuant to contracts of employment. See §§ 231.36(4)(c) and (6)(b). As amorphous and unbounded as the words "good cause" may seem when not specifically elaborated upon by the legislature, we are unwilling to ascribe to the expression a limitation which forecloses a school board from exercising its ability to decline a recommendation for a lawful, rational, non-arbitrary, non-statutory reason. Just as there is a facially apparent purpose in sections 231.36(4)(c) and (6)(b) not to grant school boards the unbridled power to determine reasons for suspending or terminating employees employed in accordance with contracts of employment, there are significant considerations, both practical and literal, for not binding a school board to a definition of "good cause" confined in the manner urged by Spurlin. We note in passing that the position denied Spurlin by the School Board is one placing its occupant in proximate functional contact with the School Board and its members. The position of deputy superintendent is second only to the superintendent in the administrative organization of the school district, and the deputy routinely fills in for the superintendent in his absence. Within that setting, but without attempting to catalog the myriad circumstances that can be envisioned, it is sufficient to observe that a potential appointee may be wholly free from the behavior or events specified in section 231.36(4)(c) but nonetheless be objectively unsuitable for the recommended role. Our observation is not, we emphasize, to gainsay that a school board may not lawfully seize upon a pretextually sound but actually invidious reason for rejecting a recommendation. The degree of due process contemplated by Von Stephens and accorded by section 120.57(2) provides both a deterrent to and, if found to exist, a remedy for such conduct.
We have serious difficulty with the position Spurlin asserts, deriving from the comment in Von Stephens, that "[u]nless good cause is shown, that is failure of appellant to meet the criteria of Chapter 231 ...," a school board must subscribe the superintendent's recommendation. It approaches absurdity to treat the above-quoted language as this court's declaration that once a person achieves the superintendent's recommendation, such person must be appointed if he or she is not tainted by one or more of the seven deadly sins. We are persuaded that the reference in section 230.23(5) to the "criteria of Chapter 231" cannot mean that the absence of the statutorily prescribed grounds for suspension or termination automatically qualifies the person *297 for appointment; rather that language contemplates that the person recommended by the superintendent is qualified by skill and training and is "properly certificated"  conditions which must exist prior to reaching a question of whether good cause exists for declining to follow the superintendent's recommendation. Moreover, we recognized in Von Stephens that a school board is permitted to determine if the nominee is morally or professionally disqualified. See State ex rel. Lawson v. Cherry, 47 So.2d 768 (Fla. 1950). Apart from moral disqualification, a concern not present in this matter but certainly one calling for a standard unblemished by subjective values, see Sherburne v. School Board of Suwanee County, 455 So.2d 1057 (Fla. 1st DCA 1984), the expression "professional disqualification" offers a benchmark requiring an inquiry vastly greater than and different from that to which Spurlin would limit the School Board. In fulfilling its statutory obligation to base the declination of a superintendent's recommendation upon "good cause," a school board would be remiss if it were to ignore the broad array of published principles governing Florida's education profession. Rule 6B-1.006, Fla. Admin. Code. If a violation of those canons will sustain the deprivation of a state granted teaching certificate, see §§ 231.262, 231.28, Fla. Stat. (1985), the same principles certainly should be no less operative in determining whether an educator is disqualified from appointment to a position within the administrative or supervisory staff of a school system. We now hold that a school board may look to those principles in determining "good cause" without running afoul of the prescription that a school board's appointment of personnel is "subject to the requirements of Chapter 231."
In sum, although a school board does not have an unfettered power to fashion reasons for rejecting a superintendent's recommendation, the legislature has not ordained that a school board's capacity to reject a superintendent's recommendation for employment be circumscribed by the statutory grounds applicable to the suspension of an employee from duty or the termination of an existing contract of employment.
Affirmed.
SCHEB, A.C.J., and LEHAN, J., concur.