JOANOS, Judge.
Lamar Advertising Company (Lamar) appeals a final administrative order revoking outdoor sign permits issued to Lamar in 1985. The question presented in this appeal is whether the Department of Transportation (DOT) can revoke an outdoor advertising sign permit by changing its method of taking measurements from a sign to a park. We reverse.
On June 20, 1988, DOT sent a notice of violation to Lamar Advertising, advising that Lamar’s double-faced sign located on the south side of State Road 292 in Escam-bia County was in violation of section 479.-11(4), Florida Statutes, which prohibits placement of signs within 100 feet of a public park, and that the permits issued for said sign would be revoked unless the situation were corrected within thirty days, or Lamar requested an administrative hearing. Evidence adduced at the hearing subsequently held at Lamar’s request, indicates that the sign permit application filed by Lamar in 1985 placed DOT on notice that there was a state park in the vicinity of the proposed sign site. The evidence further reflects that the DOT employee who recommended approval of Lamar’s sign permit application in 1985 did not check the distance of the sign from the state park before recommending the application for approval. A DOT supervisor testified that in 1988, as a result of information provided to him by another sign company operating in the area, he directed DOT personnel to determine whether Lamar’s sign was properly located.
The testimony of the DOT witness who conducted a survey and prepared a survey sketch of the Lamar sign location indicates that by one method of measurement, the base of Lamar’s sign is approximately sixty-four feet from the state park boundary. A straight line measurement from another point indicated the sign was fifty-five feet from the state park boundary. The DOT surveyor stated that he measured the shortest line that he could get from thé northeast face of the sign to the state park boundary. He further stated that he had not calculated the distance from the point on the county right of way that is opposite the center of the sign monopole to the state park boundary. The surveyor agreed that there are a number of different ways that could be used to measure the distance between the pole and the park, including measuring by straight sight distance, by the county right of way, or by the state right of way, and that each method would yield a different result. DOT’s outdoor advertising supervisor testified that for purposes of section 479.11(4), the department measures distances from the nearest point of the sign to the boundary of the public park property. The supervisor further stated that DOT has no written policy, either in regulation or in any other written form, prescribing a methodology for measuring distance from a prohibitive object.
Lamar’s only witness was its lease manager, Mr. Grimsley. Mr. Grimsley stated that he used a recently calibrated roller tape to measure the distance from Lamar’s sign to the state park. He measured along the right of way of State Road 292, from a point on the east line of State Road 292 opposite Lamar’s sign, northerly along the right of way to the intersection of the DOT right of way for State Road 292, and the state park boundary. Using the right of way method, the distance from Lamar’s sign to the park boundary was 134 feet. According to Mr. Grimsley, when determin *242 ing location approval of outdoor advertising signs, DOT customarily measured along the right of way of the road from which the sign would be read by passing motorists. DOT offered no rebuttal to Mr. Grimsley’s testimony.
The hearing officer’s recommended order makes the factual determination that “as far as the evidence disclosed, DOT has never measured the distance between a park and a sign along any line other than the one joining the nearest points of the sign and the park boundary.” As a conclusion of law, the hearing officer found that this case—
differs from those where DOT first characterized a site as commercial or industrial then reweighed the same factors and concluded the site was agricultural or residential. Here the agency did not originally interpret the pertinent statute at all, and the sign never was lawful. Nor is this a case where an agency seeks to put in issue facts earlier conceded. At least some of the DOT personnel charged with evaluating the applications were unaware of the unequivocal statutory separation requirement. The site has always been within 100 feet of the park and DOT never made any determination otherwise.
The hearing officer further found that Lamar had not proven facts that would give rise to estoppel, and recommended that DOT revoke Lamar’s outdoor advertising sign permits. DOT’s final order adopted the hearing officer’s recommended order in its entirety, thereby revoking Lamar’s sign permits.
Lamar maintains that more than three years after the subject sign permits were issued and the sign was built, DOT used a different method of measuring the distance from the sign to the state park, to conclude that the site was located less than 100 feet from a public park. According to Lamar, nothing had changed in the period from 1985 until 1988 when DOT issued its notice of revocation, except the method used by the department to determine the distance between the sign and a facility that constitutes a location restriction on outdoor advertising signs. Lamar further contends that there is no competent substantial evidence to support the conclusion that the method used by DOT in 1988 to make the contested measurement was the same method that had always been used by the department.
DOT contends that there is no foundation in the record to support Lamar’s assertion that the department changed the manner in which it measures the distance between a sign and a state park boundary, subsequent to issuance of the revoked permits. According to DOT, Lamar introduced no testimony from anyone in the department that the DOT ever employed the right of way method for section 479.11(4) measurements.
The applicable statute, section 479.11(4), Florida Statutes (1987), provides in pertinent part:
No sign shall be erected, used, operated, or maintained:
[[Image here]]
(4) Within 100 feet of any church, school, cemetery, public park, public reservation, public playground, or state or national forest, when such facility is located outside of an incorporated area, ...
Our examination of Chapter 14-10 of the Florida Administrative Code reveals that the department has not promulgated a rule prescribing a method for measuring distance from a prohibited object such as a school or public park. Indeed, the DOT supervisor testified that the department does not have a written policy or rule for this specific subject. The department’s rule which deals with the manner of measuring the minimum distance between structures provides:
The minimum distance between structures shall be measured along the nearest edge of the pavement between points directly opposite that part of the sign nearest the pavement or in the case of parallel signs, from a point opposite the center of the sign and shall apply only to structures located on the same side of the highway.
Fla.Admin.Code Rule 14-10.006(l)(b)8.
According to Mr. Grimsley’s testimony, during the nine years he has worked for *243 Lamar in outdoor advertising, the department measurements for sign placement purposes had been performed as written in the regulations relating to distance between structures, i.e., along the right of way of the road from which passing motorists will read the sign. The department offered no rebuttal to Mr. Grimsley’s testimony. Furthermore, the testimony of DOT personnel concerning the department’s method of measuring for sign placement in the context of section 479.11(4) pertained to the department’s present method of measurement, and not the method employed in 1985 when the subject sign permits were issued. There was no testimony, other than that of Mr. Grimsley, concerning the department’s method of measuring sign location from prohibited objects in 1985 when Lamar’s permits were issued.
Apparently in 1985 DOT employed a different method of measurement, because otherwise the contested permits would not have been issued. Concomitantly, the legal conclusion that DOT had not interpreted the statute when the original permits were issued is not supported by either the record or the statute. Since section 479.11(4) does not prescribe a methodology for determining placement of a sign in the area of a public park, DOT was required to interpret the provision in 1985 before it issued the contested permits.
As a final note, DOT’s reliance on Braddock v. School Board of Nassau County, 455 So.2d 394 (Fla. 1st DCA 1984), is misplaced. Braddock holds that there must be competent substantial evidence in the record to support a factual finding under-girding an administrative order. In this case, as in Braddock, there is an absence of competent substantial evidence to support the critical factual determination upon which the agency’s order rests.
We find the fact scenario of this case brings it within the purview of the principle of law enunciated in Tri-State Systems, Inc. v. Department of Transportation, 500 So.2d 182 (Fla. 1st DCA 1986), and cases cited therein. That is, “[ajlthough DOT may revoke a permit for the reasons stated in the statute, it may not do so because DOT’s interpretation of that statute has subsequently changed.” 500 So.2d at 183.
Accordingly, the final order revoking Lamar Advertising’s outdoor sign permits is reversed.
BOOTH and ALLEN, JJ., concur.