640 So.2d 164 (1994)
John TENBROECK, Appellant,
v.
Betty CASTOR, as Commissioner of Education, Appellee.
No. 93-771.
District Court of Appeal of Florida, First District.
July 29, 1994.
Albert S.C. Millar, Jr., Jacksonville, for appellant.
Sydney H. McKenzie, III and Gregory A. Chaires, Tallahassee, for appellee.
PER CURIAM.
Appellant appeals a final order of the Education Practices Commission (EPC) taking disciplinary action against his teaching certificate. We reverse.
During the school year of 1989-90, appellant served as assistant principal at Westside Skills Center. He was 48 years old. Attending the school was a 15 year-old tenth grade student, Angela McKenzie. According to Angela, she first met appellant during school orientation in January 1990. Because she was experiencing a divorce in her family, she began talking with appellant, whose duties included counseling students. Thereafter, the two were seen together both on and off campus, and in the Spring school personnel began to suspect that they were maintaining an inappropriate relationship. At one point, the principal called appellant into his office. The principal, who remarked that appellant was an honest employee, testified that appellant assured him that he was not maintaining an inappropriate relationship with Angela. Nevertheless, suspicions continued. On the last day of school, the principal talked to appellant again and was assured that nothing improper was going on.
For unrelated reasons, appellant was transferred to another high school for the school year 1990-91. On December 18, 1990, appellant and Angela, who was then 16 and had received her father's permission to marry, were married. After the principal's warning at the end of the 1989-90 school year, there is no evidence that the two were seen together in public until after their marriage.
*165 On January 15, 1991, appellant resigned his position with the school board; however, this resignation was subsequently rescinded by the school board, and appellant was placed on administrative leave.[1] Then, in July 1991, Betty Castor, as Commissioner of Education, filed an administrative complaint against appellant charging that he had engaged in a personal relationship with Angela McKenzie, a student, during the school year 1989-90 and 1990-91. The complaint stated that these allegations of misconduct constituted violations of: (1) section 231.28(1)(c), Florida Statutes, in that appellant was guilty of gross immorality or an act involving moral turpitude; (2) section 231.28(1)(f), Florida Statutes, in that appellant was guilty of personal conduct which seriously reduced his effectiveness as an employee of the school board; (3) section 231.28(1)(h), Florida Statutes, in that appellant had violated the provisions of law or rules of the State Board of Education, the penalty for which was revocation of his teaching certificate; (4) Rule 6B-1.006(3)(a), Florida Administrative Code, in that appellant failed to make a reasonable effort to protect students from conditions harmful to learning or to health or safety; (5) Rule 1.006(3)(e), Florida Administrative Code, in that appellant intentionally exposed a student to unnecessary embarrassment or disparagement; and (6) Rule 6B-1.006(3)(h), Florida Administrative Code, in that appellant exploited a professional relationship with a student for personal gain or advantage. Tenbroeck disputed the allegations and requested an administrative hearing.
At the subsequent hearing, Angela testified that she and appellant first became romantically involved the night they were married. She denied having premarital sex with him. Although some of her friends testified that she had told them a contrary story, this testimony was objected to on the grounds of hearsay. The hearing officer found there was no competent, credible evidence that the two engaged in sexual activities prior to marriage. Additionally, the hearing officer found no competent, credible evidence that the two acted in a romantic or otherwise inappropriate fashion while on the campus or in the presence of other students and faculty.
Nevertheless, the hearing officer found that the two had a "personal relationship," not just a "teacher/student" relationship, based upon the following evidence adduced from teachers and administrators at Westside Skills Center:
4. During the Spring of 1990, respondent and Angela were observed on numerous occasions talking with each other at the bus stop from around 7:45 AM, when she first arrived on campus, until 7:55 AM, when respondent's duty of monitoring buses ended. On several occasions during the same time period, she was observed visiting respondent's office and speaking with him behind closed doors. In addition, the two were seen leaving campus together in respondent's car several times either at midmorning or during lunch hour, and several times they were seen arriving together by car early in the morning. Further, on several occasions Angela telephoned respondent at his office after she had left campus. Finally, one member of the Westside faculty recalled periodically seeing the two riding in respondent's automobile off-campus during the evening hours while another faculty member described seeing the two spending an "unusual" amount of time together. While some of the observations of the two being seen together may have been occasioned by respondent giving Angela a ride to the Edward White campus at lunch hour (if she missed her ride on the school bus), or giving her rides to Karate practice in the evenings where he served as her trainer or coach, collectively these observations, coupled with the fact that the two were later married, support a finding that their relationship was more than that of a teacher/student... .
The hearing officer rejected Angela's testimony that the two were not involved in a personal relationship before they were married as not credible. Nevertheless, the hearing officer acknowledged that school officials had taken no action against appellant at the *166 conclusion of the 1989-90 school year because they had no evidence of wrongdoing.
The Commissioner introduced the testimony of a 30-year employee of the Duval County School Board accepted as an expert in school administration. After summarizing the facts which are quoted above, counsel representing the commissioner asked the expert whether these facts, if taken to be true, would make the person engaging in this conduct "guilty of personal conduct which seriously reduces his effectiveness as an employee of the school board?" The expert answered "yes" and elaborated further:
This would be because of the working with the youngsters of that age group where it appears to be common knowledge and even into the community. Again, as school officials, we are expected to observe a certain standard in this (sic)  and this we would not be doing it, and it would be somewhat less.
On the other hand, the expert acknowledged that appellant had received a very high evaluation for the 1989-90 school year. Specifically, he said: "I'm not aware of his doing an unsatisfactory job. All I'm aware of is that his supervisor speaks well of him."
In an important exchange with the hearing officer, the expert admitted that there is no policy or rule in Duval County which prohibits a teacher from marrying a student and that marriage by itself would not serve as a basis for taking disciplinary action against a teacher. The expert attempted to distinguish appellant's situation, commenting that there was public knowledge of the administrator seeing the student, "and the student's discussion of it, the parent's discussion of it." However, no student, parent, or teacher testified in the proceeding below that appellant's relationship with Angela (before the marriage) was public knowledge, was publicly discussed, or that his relationship hindered his effectiveness as an administrator or teacher in the classroom.
Rule 6B-4.009(2), Florida Administrative Code, defines immorality as conduct that is inconsistent with the standards of public conscience and good morals. It is conduct sufficiently notorious to bring the individual concerned or the education profession into public disgrace or disrespect and impair the individual's service in the community. Rule 6B-4.009(6) defines moral turpitude as a crime that is evidenced by an act of baseness, vileness or depravity in the private and social duties, which, according to the accepted standards of the time, a man owes to his or her fellow man or to society in general, and the doing of the act itself and not its prohibition by statute fixes the moral turpitude.
The hearing officer concluded that the evidence, "at least inferentially," showed that appellant was engaged in a "personal relationship" with Angela beginning in the Spring of 1990 and continuing until their marriage in December 1990. It was this personal relationship, concluded the hearing officer, that established a violation of section 231.28(1)(c), Florida Statutes. Similarly, by virtue of having this personal relationship, the hearing officer concluded that appellant's effectiveness as a teacher had been seriously reduced establishing a violation of section 231.28(1)(f), Florida Statutes. Without elaborating, the hearing officer also found violations of Rule 6B-1.006(3)(a), and (h), and that these rule violations in turn constituted a violation of section 231.28(1)(h), Florida Statutes. The hearing officer concluded that the allegation of misconduct for violating Rule 6B-1.006(3)(e), in that appellant intentionally exposed a student to unnecessary embarrassment or disparagement, must fail.[2]
The hearing officer recommended that appellant's teaching certificate be suspended for two years beginning on January 15, 1991, that he receive a letter of reprimand from the EPC, and that he be placed on three years probation after the suspension is completed with quarterly reports given to the EPC by his immediate supervisor. Upon review, with one minor correction, the EPC adopted the recommended findings of fact and conclusions of law. The EPC adopted *167 the penalty recommended by the hearing officer but added an additional restriction, that for the period of two years from the effective date of its order, appellant was prohibited from serving as a Florida educational administrator.
There must be clear and convincing evidence of wrongdoing before disciplinary action may be taken against the professional license of a teacher. Ferris v. Turlington, 510 So.2d 292 (Fla. 1987). Pursuant to section 120.68(10), Florida Statutes, governing appellate review, this court is precluded from substituting its judgment for that of the agency as to the weight of the evidence on any disputed finding of fact; however, this court is required to set aside agency action and remand the case to the agency if it finds that the agency's action depends on any finding of fact that is not supported by competent, substantial evidence in the record.
This record is not replete with issues of disputed fact. Instead, by and large, the facts testified to by the witnesses are undisputed.[3] In its entirety, the competent evidence shows that appellant and Angela were seen together an unusual amount of time during the Spring of 1990, and that this caused the teachers and administrators at Westside Skills Center to suspect wrongdoing. When asked to explain, appellant repeatedly denied that a personal relationship with Angela existed. He was described by his principal as "honest" and given a very good evaluation for the 1989-90 school year.
There was no competent, credible evidence that the two engaged in sexual activities prior to marriage or otherwise acted in a romantic or inappropriate fashion while on the campus or in the presence of other students and faculty. Because school administrators had no evidence of wrongdoing at the close of the 1989-90 school year, no action was taken against appellant. The two were not seen together until after their marriage six months later.
Angela and appellant's marriage cannot form the basis of action against appellant's license because no policy or rule forbids a marriage between a teacher and a student. While the hearing officer recognized this, he nevertheless concluded that this marriage, combined with the evidence that the parties spent an unusual amount of time together in the Spring of 1990, "inferentially" showed that appellant was engaged in a personal relationship with Angela beginning in the Spring of 1990 and continuing until their marriage in December 1990.
In finding a personal relationship based upon the evidence presented, the hearing officer erred. The evidence was not clear and convincing that appellant and Angela maintained an inappropriate personal relationship rather than a teacher/student relationship prior to their marriage. While the facts may raise a suspicion of wrongdoing, they do not rise above mere suspicion. Speculation, surmise and suspicion cannot form the basis of disciplinary action against a teacher's professional license. Compare Sherburne v. School Board of Suwannee County, 455 So.2d 1057, 1061 (Fla. 1st DCA 1984) (one's presence as an overnight or even month long guest in the residence of another of the opposite sex provides nothing beyond supposition to reflect upon that person's morality and is insufficient to serve as the basis of the school board's order denying that person's continuing contract rights as a teacher). Having found no competent evidence beyond speculation, surmise and suspicion that an inappropriate relationship existed between appellant and Angela, the charges against appellant cannot be sustained.
While we do not deem it is necessary to individually address each of the charges, and the failure of proof therefor, we do deem it appropriate to address the issue of whether *168 appellant's effectiveness as a teacher was impaired as the result of his conduct. As already stated, no student or teacher testified that appellant's effectiveness as a school teacher had been seriously reduced as a result of the challenged conduct. The opinion testimony of appellee's expert to that effect was pinned upon the notoriety created in the community by the marriage between appellant and Angela. However, standing alone, the marriage was not unlawful. The attendant publicity surrounding appellant's marriage, which in itself is not a crime or a violation of any rule or statute, cannot be used by the commissioner or the EPC to establish that appellant's effectiveness as a teacher or administrator has been impaired. See Sherburne, 455 So.2d at 1061; Baker v. School Board of Marion County, 450 So.2d 1194 (Fla. 5th DCA 1984); and Boyette v. State Professional Practices Council, 346 So.2d 598 (Fla. 1st DCA 1977). The opinion of the expert, based as it was upon a conclusion contrary to established Florida case law, does not constitute competent, substantial evidence supporting the action taken against appellant. Federated Department Stores, Inc. v. Doe, 454 So.2d 10, 12 (Fla. 3d DCA 1984) (an expert's opinion, if based upon an erroneous concept of law, is devoid of competency).
Lest it be misunderstood, this opinion should not be read as restraining the EPC from taking disciplinary action against a teacher guilty of maintaining an inappropriate relationship with a student. This opinion is confined to the facts presented in this case. Nothing herein is intended to intimate that inappropriate teacher/student relationships may not form the basis for charges against a teacher. We merely hold that the quantum of proof adduced in this case fails to substantiate wrongdoing on appellant's part warranting disciplinary action.
REVERSED.
SMITH and BENTON, JJ., concur.
LAWRENCE, J., concurs in result only.
NOTES
[1] Although it is not entirely clear in the record, it appears that the appellant remained employed by the school board, first in the media center and then in the transportation department.
[2] In addition, the hearing officer found that appellant had violated Rule 6B-1.006(4)(c), Florida Administrative Code, although appellant had not been charged with violation of this rule. Upon review, the EPC deleted this finding of guilt, determining that such violation was not supported by the record.
[3] There is one notable exception. Angela testified that she and appellant did not have a romantic or personal relationship until the night they were married. On the other hand, friends of hers, over a hearsay objection, were permitted to testify that Angela told them otherwise  that she and appellant were romantically involved. However, these witnesses offered no other evidence of personal observations of a romantic relationship between appellant and Angela. Because of the hearsay nature of their testimony, and the fact that it did not supplement other competent evidence, the hearing officer was constrained to find that there was no evidence the two engaged in sexual activities prior to marriage. See, § 120.58(1)(a), Florida Statutes.