708 So.2d 602 (1998)
AMERICAN RED CROSS, United Way, Rutherford H. Spessard, Jr., The Salvation Army, John D. Barker, James T. Barker, Sr., Frances V. Lawrence, James N. Barker, Jr., Pamela B. Gordon, (the "Barker Group"), and Mary Gallagher, Beneficiaries, Appellants,
v.
In re ESTATE OF John Anderson HAYNSWORTH, Jr., Deceased, Appellee.
Nos. 97-101, 97-95, 97-87, 96-3496, 96-3473, 96-3443 and 96-3440.
District Court of Appeal of Florida, Third District.
February 18, 1998.
Rehearing Denied April 22, 1998.
*603 Greenberg, Traurig, Hoffman, Lipoff, Rosen & Quentel and Arthur J. England, Jr., and John G. Crabtree; Ruden, McClosky, Smith, Schuster & Russell and Samuel S. Smith, for appellants American Red Cross and United Way of Dade County.
Samuel Spencer Blum, for Rutherford H. Spessard, Jr.; George Elias, Jr., for appellants John D. Barker, James N. Barker, Jr., Frances V. Lawrence, James T. Barker, Pamela B. Gordon and Mary Gallagher (the "Barker Group").
Heller and Kaplan and Daniel Neal Heller and Dwight Sullivan and Joseph Currier Brock, for appellee.
Before JORGENSON, LEVY and GREEN, JJ.
LEVY, Judge.
Three charitable organizations and several relatives who are the beneficiaries of a large estate appeal from a final judgment that admitted a certain will into probate and declared two other competing wills invalid. For the reasons contained herein, we reverse and remand.
Mr. John Anderson Haynsworth, Jr., enjoyed great financial success as a result of real property investments in Miami Beach. He was married for fifty years to Maybelle Haynsworth until her death in 1988, at which time Mr. Haynsworth was eighty-nine years old. After the death of his wife, Mr. Haynsworth sold his large home and moved into an apartment. He was represented in the sale by his long-time attorney, Ted Blum.
Shortly after Hurricane Andrew, in August, 1992, Mr. Haynsworth's niece, Lisa Haynsworth-Jones, (the "Niece") traveled to Miami from West Palm Beach to visit her then ninety-three year-old uncle. She later returned to West Palm Beach.
This controversy concerns three separate wills executed by Mr. Haynsworth during the year of 1993. With the help of Ted Blum, Mr. Haynsworth executed the first of the *604 three wills, the "February Will", on February 4, 1993. This will directed that the American Red Cross, the United Way, and the Salvation Army (the "Charities" or "Appellants"), receive the lion's share of Haynsworth's six million dollar estate. The large bequests to the Charities were consistent with Mr. Haynsworth's prior wills. According to the Niece, Blum refused to supply Mr. Haynsworth with a copy of the February will because it contained a very large fee or bequest to Blum in the amount of approximately five percent of the estate.
The Niece traveled again to Miami and stayed with Mr. Haynsworth in his apartment. Soon thereafter, real estate broker Paula Pred was retained and a house in Miami Beach worth $319,000 was purchased by Mr. Haynsworth. According to the Niece, Blum became aware of the purchase and wrote a letter to Mr. Haynsworth which advised him that Blum was available to represent him in the purchase. However, Paula Pred's husband, attorney Stanley Pred, was hired by Mr. Haynsworth.
On April 16, 1993, Blum filed a petition to determine the capacity or incapacity of Mr. Haynsworth. According to the Niece, this action was one of retaliation against Mr. Haynsworth for not hiring Blum to represent him in the purchase of the new house. In the course of the competency proceedings, the Niece made application to become Mr. Haynsworth's guardian.
The competency hearing was held on May 18, 1993. Medical testimony taken at the hearing described Mr. Haynsworth as disoriented and suffering from organic brain syndrome. One of the medical experts who had examined Mr. Haynsworth testified that Mr. Haynsworth could not recall the year, his city of residence, or the name of his wife of many years. The probate judge entered an order on July 31, 1993, nunc pro tunc to May 18, 1993, which adjudicated Mr. Haynsworth totally incapacitated and the Niece was appointed his guardian.
In June or July of 1993, Mr. Haynsworth hired attorney Arthur Huttoe to draft a second will. According to the Niece, Mr. Haynsworth worked on a two-page document that outlined his testamentary wishes. The outline was given to Huttoe to follow in drafting a new will. The resulting will, the "July Will" was signed by Mr. Haynsworth before witnesses in Huttoe's office on July 30, 1993. Under this will, the large bequests to the Appellant Charities were greatly reduced and the bequests to the Niece and other family members were increased. On November 2, 1993, Mr. Haynsworth executed the third and final will, the "November Will".
Mr. Haynsworth died on December 29, 1995, at the age of ninety-seven. In January of 1996, probate proceedings were initiated by the decedent's nephew, Rutherford H. Spessard, Jr. for the administration of the February Will. The February Will was initially admitted to probate. Also in January of 1996, the Niece and Huttoe filed a petition for the administration of the November Will. The trial court vacated its order admitting the February Will to probate and appointed a curator. In February of 1996, the Niece and Huttoe filed an amended petition of administration seeking the admission of the November Will and the July Will. In July of 1996, the Niece filed another amended petition requesting the admission of the July Will only. This pleading averred that the other two wills, the February Will, and the November Will, were invalid.
The case proceeded to non-jury trial. The Charities and the Niece presented competing testimony from various witnesses as to the capacity of Mr. Haynsworth at the time of the execution of the July Will. For instance, the Charities presented Dr. Edward Cottler, Mr. Haynsworth's internist, who testified that Mr. Haynsworth suffered from Alzheimer's disease. The Niece presented two psychiatric experts who opined that Mr. Haynsworth possessed testamentary capacity because he could have been, or actually was, lucid at the time the July Will was executed. However, neither of these two experts had examined Mr. Haynsworth near the relevant time when the July Will was executed. The Niece also called a witness to the execution of the July Will who testified that Mr. Haynsworth was able to engage in small talk and was possibly lucid at the time of the signing of the July Will.
*605 At the close of the non-jury trial, the trial court found that the February Will was invalid as the product of undue influence exerted by attorney Blum. This determination was based on the fact that the fee awarded Blum under the February Will amounted to approximately five percent of the estate. The trial court also found that the decedent lacked the capacity to execute the November Will. Accordingly, the trial court ordered that the July Will be admitted to probate. The Charities filed timely notices of appeal. Several relatives of the deceased, John D. Barker, James N. Barker, Frances V. Lawrence, James T. Barker, Pamela B. Gordon, (the "Barker Group"), and Rutherford Spessard and Mary Gallagher also appealed and all appeals were consolidated.
There are three issues essential to the disposition of this case: (1) what is required to establish testamentary capacity in the presence of a prior adjudication of incompetency, (2) what party bears the burden of demonstrating testamentary capacity, and was that burden adequately met in this case, and, (3) if one part of a will is invalid as the product of undue influence, is the entire will rendered void?

I. Testamentary Capacity
Long ago, a definition of testamentary capacity was set forth by the Supreme Court of Florida:
The rule for testing testamentary capacity is thus stated by the great jurist Lord Erskine:
But their lordships are of the opinion that, in order to constitute a sound disposing mind, a testator must not only be able to understand that he is by his will giving the whole of his property to one object of his regard, but that he must also have capacity to comprehend the extent of his property ...
* * * * * *

Harwood v. Baker, 3 Moore, 282, 13 Eng. Rep. (Full Reprint) 117.
A like rule governs the courts of this country:
We have held that it is essential that the testator has sufficient capacity to comprehend perfectly the condition of his property, his relations to the persons who were, or should, or might have been the objects of his bounty, and the scope and bearing of the provisions of his will. He must, in the language of the cases, have sufficient active memory to collect in his mind, without prompting, the particulars or elements of the business to be transacted, and to hold them in his mind a sufficient length of time to perceive at least their obvious relations to each other, and be able to form some rational judgment in relation to them. A testator who has sufficient mental power to do these things is, within the meaning and intent of the statute of wills, a person of sound mind and memory, and is competent to dispose of his estate by will. Delafield v. Parish, 25 N.Y. 9.
Newman v. Smith, 77 Fla. 633, 673-74, 82 So. 236, 247-48 (1918). It is recognized that testamentary capacity, or "sound mind", is the "ability of the testator to mentally understand in a general way the nature and extent of the property to be disposed of, and the testator's relation to those who would naturally claim a substantial benefit from the will, as well as a general understanding of the practical effect of the will as executed." Id. at 649, 82 So. at 241; see also In re Dunson's Estate, 141 So.2d 601, 604 (Fla. 2nd DCA 1962); In re Wilmott's Estate, 66 So.2d 465, 467 (Fla.1953); Coppock v. Carlson, 547 So.2d 946, 947 (Fla. 3d DCA 1989)("... the ability to understand the nature and extent of his property, the natural objects of his bounty, or the general process of will-making."); In re Estate of Weihe, 268 So.2d 446 (Fla. 4th DCA 1972), quashed on existing facts, 275 So.2d 244 (Fla.1973).
Where the subject will is executed after the testator has been declared legally incompetent, it must be proved that the testator returned to a state of testamentary capacity by demonstrating that the will was executed during a lucid moment. See In re Estate of Supplee, 247 So.2d 488, 490 (Fla. 2d DCA 1971)("Florida law is likewise well settled to the effect that although an incompetency adjudication creates a presumption of lack of testamentary capacity as to any will thereafter executed during the continuance *606 of such adjudication, that such presumption may be overcome on proof that the will was executed by the adjudged incompetent during a lucid interval."). The terms "lucid moment" or "lucid interval" do not describe a moment when the testator was not patently delusional. A "lucid moment" is a period of time during which the testator returned to a state of comprehension and possessed actual testamentary capacity.

II. Evidentiary Burden
The Supreme Court of Florida has stated that "an adjudication of incompetency shifts the burden of going forward with the evidence on testamentary capacity to the proponent of the will." In re Estate of Ziy, 223 So.2d 42, 43 (Fla.1969); see also Grimes v. Estate of Stewart, 506 So.2d 465, 467 (Fla. 5th DCA 1987)("Although a declared incompetent may have sufficient lucid moments during which to execute a valid will, nevertheless, adjudication of incompetency of a testator creates a prima facia case against the proponent of such a will.")(footnotes omitted). In the instant case, Mr. Haynsworth was declared legally incompetent on May 18, 1993. Therefore, the burden of going forward with evidence as to the capacity of Mr. Haynsworth rested with the Niece.
Now that we have identified the appropriate test for testamentary capacity and determined that the burden to prove a return to capacity rested with the Niece, we turn to the question of whether the Niece adequately met that burden. The Niece presented two expert witnesses who opined that Mr. Haynsworth had testamentary capacity to execute the July Will. However, one of these experts had never examined Mr. Haynsworth, and the other had not examined Mr. Haynsworth near the time of the signing of the July Will. The Niece presented lay testimony to the effect that Mr. Haynsworth appeared lucid and was able to exchange pleasantries during the relevant time. However, none of the expert or lay testimony offered at trial provided any evidence relating to Mr. Haynsworth's testamentary capacity as it is legally defined, to-wit: Whether he had an understanding of the nature and extent of his holdings and assets, understood his relation to those who would naturally claim a substantial benefit from his will, and whether he possessed a general understanding of the practical effect of the will as executed. Accordingly, there was no competent substantial evidence that can be pointed to by the Niece/Appellee as even addressing, let alone overcoming, the presumption of incompetency that legally follows the adjudication of incompetency rendered by the court as of May 18, 1993. As a result, the trial court was in error in admitting the July Will to Probate. For the same reasons, the subsequent November Will is not capable of being probated either.

III. Partial Invalidity
Without expressing any view concerning agreement or disagreement with the trial court's finding that attorney Blum subjected Mr. Haynsworth to undue influence in connection with his fee for drafting the February Will, we note that the record contains sufficient evidence to support that finding and we will not disturb it. However, having made such a finding, the proper result under section 732.5165, Florida Statutes (1995), would be to strike only that provision awarding Blum five percent of the estate and admit the rest of the February Will to probate.[1] Accordingly, the amount of money that would have gone to Blum reverts to the residuary clause of the February Will.
For all of the above reasons, this case must be remanded to the trial court with directions to vacate the order that admitted the July Will to probate and, instead, probate the February Will.
Reversed and remanded with directions.
NOTES
[1] That statute provides: "A will is void if the execution is procured by fraud, duress, mistake, or undue influence. Any part of the will is void if so procured, but the remainder of the will not so procured shall be valid if it is not invalid for other reasons."