# Third District Court of Appeal

## State of Florida

Opinion filed January 29, 2025.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D23-0856
Lower Tribunal No. 20-977-CP-02
_____

**Garth Basil Reeves,**
Appellant,

vs.

**Oliver Gross,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Yvonne Colodny, Judge.

Kluger, Kaplan, Silverman, Katzen and Levine, P.L., and Bruce A. Katzen; Samson Appellate Law, and Daniel M. Samson, for appellant.

Kozyak Tropin & Throckmorton LLP, and Detra Shaw-Wilder and Dwayne A. Robinson; Marva L. Willey, PA, and Marva L. Wiley, for appellee.

Before LOGUE, C.J., and MILLER and BOKOR, JJ.

LOGUE, C.J.

Garth Basil Reeves ("Basil") appeals the entry of a summary judgment ruling against his challenge to the final will of his grandfather, Garth C. Reeves ("Garth, Sr."). Garth, Sr. executed the will at issue on October 4, 2019, at the age of 100. He died less than two months later. The will disinherited Basil and gave the bulk of the estate to a charitable trust. Basil contends the trial court erred in entering summary judgment because material issues of fact existed concerning Garth, Sr.'s testamentary capacity. For the reasons stated below, we affirm.

## Background

Garth, Sr. was the former publisher of the storied The Miami Times, Miami's most influential Black newspaper. He was also a successful businessman and real estate investor. When he died, he left a sizable estate. Throughout his life, Garth, Sr. made substantial inter-vivos gifts to his only daughter, Basil's mother, and to his only grandson, Basil. Those gifts included stock transferring total ownership of The Miami Times. In 2003, he executed testamentary documents that made Basil a major beneficiary.

In January 2015, April 2019, and finally in October 2019, however, he executed testamentary documents in which he disinherited Basil. He explained Basil had received his inheritance during Garth's lifetime. In his final will, he left 95% of his estate to The Integrity Foundation, a charitable

entity he created in 2016, which he directed to fund specific institutions including FAMU, his alma mater; Booker T. Washington High School; the Black Archives; and his church, "Church of the Incarnation." The will named Oliver Gross as the estate's personal representative.

As Garth, Sr.'s only lineal heir, Basil filed a petition against the personal representative to revoke Garth, Sr.'s October 4, 2019 testamentary documents. After substantial discovery, including over eleven depositions, the personal representative moved for summary judgment on the basis that there was no disputed issue of fact concerning Garth, Sr.'s testamentary capacity when he signed the documents at issue. In support, the personal representative submitted the affidavits of three witnesses.

The first witness was H.T. Smith, a prominent trial lawyer and law professor in the South Florida legal community. Smith testified he personally knew Garth, Sr. for over 50 years and had represented him in various legal matters. In early 2019, Garth, Sr. hired Smith as his general counsel and the two met almost every week for at least an hour. Smith testified that Garth, Sr. "knew the details about his various properties: when he purchased them, how they performed financially, and the people involved in the transactions." With his various business advisors, Garth, Sr. "led the discussion and directed the course of both his business and personal affairs."

After the death of his daughter, Garth, Sr. informed Smith that arrangements were being made to amend his will to, among other things, remove the provisions referring to the disinheritance of his now-deceased daughter. The amendments were being drafted by attorney Louis Nostro and lawyers working with him. On October 3, 2019, after receiving the new documents, Garth, Sr. met with Smith for two hours and extensively reviewed them. During the meeting, Garth, Sr. was "alert, fully understood the nature of his assets, his familial relations, and the practical effects of his will. He was clear about his wishes." In the meeting, he directed certain substantive revisions to the documents which Smith communicated in writing to Nostro and which are included in the record.

On October 4, 2019, Smith met with Garth, Sr., attorney Louis Nostro, and Nostro's team. After an extensive review of the documents, Nostro presided over a signing ceremony which Smith witnessed. Smith concluded: "Based on my conversations with Garth[, Sr.] and my observations of him at the October 4, 2019 meeting, I have no doubt that he was of sound mind and possessed testamentary capacity when he executed the October 4, 2019 Will . . . ." Both Louis Nostro and one of his attorneys similarly testified that Garth, Sr. was alert, attentive and engaged when he signed the testamentary document.

4

In opposition to the motion for summary judgment, Basil submitted the testimony of Dr. Marc Agronin. Dr. Agronin is board certified in Adult and Geriatric Psychiatry. Dr. Agronin never treated or examined Garth, Sr. Instead, Dr. Agronin's opinions were based on his review of Garth, Sr.'s medical records from times bracketing the date the will was executed.

Garth, Sr.'s medical records from before the signing indicated he had suffered strokes as far back as 2002 and "[t]hese changes can be associated with both sudden neurocognitive changes at the time as well as chronic impairment over time." He noted Garth, Sr. had been hospitalized from September 21 through September 23, 2019 for a cervical injury resulting from a fall. In the course of that hospitalization, Garth, Sr. had been given medications to calm and sedate him at several points. Although Garth, Sr. was not diagnosed with dementia at that time, Dr. Agronin opined that such a circumstance "is typically associated with either acute brain impairment (delirium) and / or a major neurocognitive disorder (dementia)."

After the will was signed, on November 11, 2019, Garth, Sr. suffered a stroke and was again hospitalized. At times during this hospitalization, he exhibited anger, combativeness, and anxiousness. He was alert and oriented as to place and to persons but exhibited poor attention, concentration, and recall. At this time, he was diagnosed with dementia.

Based on the records, Dr. Agronin opined that, Garth, Sr. "was suffering from an underlying major neurocognitive disorder (dementia) with delirium from at least September of 2019 through his passing." Therefore, Dr. Agronin opined, "[w]ithin a reasonable degree of medical certainty, [Garth, Sr.] did not have the required capacity to execute an estate plan on October 4, 2019." The trial court entered a detailed, twelve-page order carefully reviewing the record and relevant law and granted the personal representative's motion. This appeal timely followed.

## **Legal Analysis**

"The trial court's ruling on a motion for summary judgment presents a pure question of law, which this Court reviews de novo." USAA Cas. Ins. Co. v. Deehl, 49 Fla. L. Weekly D1977, at *3 (Fla. 3d DCA Sept. 30, 2024) (citing Volusia Cnty. v. Aberdeen at Ormond Beach, L.P., 760 So. 2d 126, 130 (Fla. 2000)). "Properly understood, summary judgment is akin to a pre-trial directed verdict." CG Tides LLC v. SHEDDF3 VNB, LLC, 388 So. 3d 1081, 1084 (Fla. 3d DCA 2024) (citing In re Amends. to Fla. R. of Civ. Proc. 1.510, 317 So. 3d 72, 75 (Fla. 2021) (recognizing "the fundamental similarity between the summary judgment standard and the directed verdict standard")).

Under both a directed verdict and a summary judgment, "[t]he substantive evidentiary burden of proof that the respective parties must meet at trial is the only touchstone that accurately measures whether a genuine issue of material fact exists to be tried." In re Amends. to Fla. Rule of Civ. Proc. 1.510, 317 So. 3d at 75 (quoting Thomas Logue & Javier Alberto Soto, *Florida Should Adopt the Celotex Standard for Summary Judgments*, 76 Fla. Bar J., Feb. 2002, at 26). See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255–56 (1986) (noting, for example, that "where the factual dispute concerns actual malice, a matter requiring proof of clear and convincing evidence,] . . . the appropriate summary judgment question will be whether the evidence in the record could support a reasonable jury finding either that the plaintiff has shown actual malice by clear and convincing evidence or that the plaintiff has not").

The substantive evidentiary burden at trial is significant here because "[t]he burden of invalidating a will because of lack of testamentary capacity is a heavy one . . . ." Hendershaw v. Est. of Hendershaw, 763 So. 2d 482, 483 (Fla. 4th DCA 2000). Indeed, Florida recognizes a "presumption of testamentary capacity." Id.

Further,

> To execute a valid will, the testator need only have testamentary capacity (i.e. be of "sound mind") which

> has been described as having the ability to mentally understand in a general way (1) the nature and extent of the property to be disposed of, (2) the testator's relation to those who would naturally claim a substantial benefit from his will, and (3) a general understanding of the practical effect of the will as executed.

Raimi v. Furlong, 702 So. 2d 1273, 1286 (Fla. 3d DCA 1997).

Florida also recognizes that individuals with issues of mental capacity often experience lucid moments. "Indeed, it is only critical that the testator possess testamentary capacity at the time of the execution of the will." Id. "Testamentary capacity is determined only by the testator's mental capacity at the time he executed his will." Hendershaw, 763 So. 2d at 483. See also id. at 484 ("Although there was some testimony that on some day in 1986 the decedent would not have been competent to make a will, there was no testimony that in December 1987, when the will was actually executed, the decedent lacked such a capacity."). Even where a person has been declared legally incompetent, his will may be recognized when the evidence demonstrates "that the will was executed during a lucid moment." Am. Red Cross v. Est. of Haynsworth, 708 So. 2d 602, 605 (Fla. 3d DCA 1998).

Accepting Dr. Agronin's opinion as true for the purposes of summary judgment that Garth, Sr. "was suffering from an underlying major neurocognitive disorder (dementia) with delirium from at least September of

8

2019 though his passing," this statement does not meet Basil's burden to overcome the presumption that Garth, Sr. was lucid when he decided to disinherit Basil. In the first place, Garth, Sr. had signed testamentary documents disinheriting Basil as early as 2015, years before the three-month period when Dr. Agronin opines Garth, Sr. was suffering from a loss of capacity. In the second place, the fact that Garth, Sr. suffered a stroke on November 11, 2019, <u>after</u> he signed the October 4, 2019 will, and was thereafter diagnosed with dementia does not support a reasonable inference that Garth, Sr. suffered from dementia before that stroke.

Moreover, Dr. Agronin reasons that, because Garth, Sr. did not have the requisite capacity at points during his short hospitalization for his fall around September 21, 2019 and after his stroke on November 11, 2019, he did not have the requisite capacity on October 4, 2019. The problem with this broad-brush reasoning is that it does not address the fact that individuals subject to mental issues often experience periods of lucidity, as the other evidence indicates Garth, Sr. did here. In the face of that record evidence, the absence in Dr. Agronin's affidavit of a fact-based chain of reasoning explaining that Garth, Sr.'s condition prevented him from experiencing the lucid intervals reported by the other witnesses is determinative. See <u>Iden v. Kasden</u>, 609 So. 2d 54, 57 (Fla. 3d DCA 1992) (noting that "expert witness'

9

opinion based on facts or inferences not supported by evidence has no evidentiary value; the opinion cannot constitute proof of the existence of facts necessary to support the opinion") (citing Arkin Constr. Co. v. Simpkins, 99 So. 2d 557 (Fla.1957)).

Dr. Agronin may have established the possibility that Garth, Sr. did not have testamentary capacity at the time he signed the will. Mere possibility, however, does not satisfy the "heavy" burden of overcoming the presumption of testamentary capacity at trial. Hendershaw, 763 So. 2d at 483. It therefore is similarly insufficient at summary judgment. In re Amends. to Fla. Rule of Civ. Proc. 1.510, 317 So. 3d at 75. See also Gonzalez v. Citizens Prop. Ins. Corp., 273 So. 3d 1031, 1037 (Fla. 3d DCA 2019) (noting that "an affidavit averring a pilot had sometimes in the past allowed other persons in a plane to pilot aircrafts did not create an issue of fact as to whether the pilot was allowing another person to pilot the aircraft during a particular fatal crash").

Affirmed.