HOWELL, CHARLES COOK, Jr., Associate Judge.
Deeming it a forbiddingly formidable task to improve on the opinion of the *565 court below, we take the liberty of simply setting forth the opinion in haec verba.[1]
“The sole question presented for adjudication in this case is the proper computation of sales and use taxes with respect to monies received by the plaintiff, Stapling Machines Co., from various lessees of machines owned by Stapling and leased to manufacturers of boxes. The facts are not in serious dispute.
“Stapling is the owner of numerous patents and is the manufacturer of machines that are used in the production of various types and kinds of boxes, which machines it leases to box manufacturers.
“The leases are of a uniform style, and all are obviously drawn with great care. Insofar as pertinent here, the leases provide that Stapling will deliver machines ordered by lessees for the use of the lessees in the manufacture of boxes. The lessees agree to pay, upon delivery of the machines, a sum to be fixed by Stapling ‘not to exceed the reasonable cost of production of such machines.’ In addition, it is provided that
“ ‘Lessee agrees to pay to Lessor, in addition to the amounts hereinbefore provided to be paid by Lessee for the initial right to possess the machines leased hereunder, (a) sums of money equal to four per cent (4%) of the gross sales or fair market value, whichever is higher, of all ‘Rock Fastener’, ‘All-Bound’, and ‘James’ boxes made under this agreement, and (b) sums of money equal to two per cent (2%) of the gross sales or fair market value, whichever is higher, of all other boxes made under this agreement; and Lessee agrees to pay such sums as a royalty for the use of any or all of the patented inventions hereunder licensed to be used and/or as a rental for the use of any or all machines leased hereunder . . .’
“The leases provide that the machines shall at all times remain the property of the lessor. Provision is made for the proper care of the machines by the lessee, and for periodic accounting for the sales price of all boxes sold, so as to guarantee that the lessor will receive the proper payments based upon the lessee’s sales.
“The leases also provide that the lessee will be given the right to use any new patents developed or acquired by the lessor.
“The defendant Revenue Commission has assessed taxes based upon the full amount becoming due and payable to Stapling under these leases. However, Stapling contends that this is not proper because (it says) a large percentage of the monies paid by the lessees to it are not rent but are compensation for services consisting of various promotional and advertising activities carried on by Stapling for the benefit of the lessees.
“The evidence shows without contradiction that Stapling does, in fact, expend very substantial sums of money each year in these activities, and it is logical to assume that these activities result in greater sales of boxes by the lessees. It is the theory of Stapling that a proportionate part of the ‘rentals’ paid should be considered as compensation for services and not taxed.
“The Court cannot agree.
“Careful examination of the leases discloses that the lessees obligate themselves to pay the specified percentages of their gross sales without any corresponding obligation on the part of Stapling to render any services other than those specified in the leases.
“It is quite- obvious that should Stapling elect to stop all its promotional activities, there is no provision of the con *566 tract which would be violated, and each lessee would still be obligated to pay the specified percentages of the sales price of all boxes which it sells.
“But Stapling contends and some of its lessees testify that there is an unwritten, unspecified, but implied understanding between the parties that these promotional activities will be pursued by Stapling for the mutual benefit of all the parties. However this may be, the obligation to pay the rentals being taxed does not arise from any implied agreement. The obligation of the lessees to pay arises exclusively from the express language of the leases, and it is that obligation to pay which results in the payments the tax upon which is the subject of this litigation.*[2] Those payments are expressly stated in the agreement to be rent, and they are clearly rent within the terms of the taxing statute. Not without significance in this connection is a provision of the lease as follows:
“ ‘None of the conditions of this agreement shall be held to have been waived by any act or knowledge of either party, or its agents, but only by an instrument, in writing, signed by one of the executive officers of such party, thereunto duly authorized.’
“Stapling did not see fit to obligate itself in its written contract to conduct any promotional activities or do any advertising. Each lessee is obligated to pay the rentals prescribed without any covenant-on the part of Stapling to perform the promotional or advertising activities. The payments upon which taxes have been levied are only the payments required by the written contract and they are, therefore, rent and taxable as rent.
“The case of Piedmont Canteen Service, Inc., v. Wm. Johnson, Commissioner of Revenue [256] N.C. [155]), 123 South Eastern Reporter, 2nd Series 582, reaches a similar conclusion in a similar factual situation.
“It is, therefore,
“ADJUDGED that all payments made to Stapling Machines Co. by its lessees pursuant to the terms of the written contracts described in the pleadings in this cause are subject to taxation as rent pursuant to Chapter 212, Florida Statutes. If a more specific judgment is required, either party may submit a draft of proposed judgment.”
Probably, however, in all fairness to Stapling, comment might appropriately be made here upon two points stressed by it.
For example, Stapling argues that its promotional and advertising activities “have been integrated into the Agreement by custom and usage”; but the law as we understand it is that “common usage may be resorted to clear up and make definite that which is doubtful or uncertain but it will not be employed to vary or contradict that which the parties have set down and agreed to in no uncertain terms. If the terms of the contract are clear and certain, they will not be disturbed by usage no matter how well settled it will be nor will usage be permitted to read express terms from the contract.” Roe v. Henderson et al., 1939, 139 Fla. 386, 190 So. 618, 619 [3, 4]. Later on the Supreme Court “agree(d) with the Circuit Judge” in MacGregor v. Hosack, Fla., 1952, 58 So.2d 513, 515, “that ‘custom and usage’ cannot prevail as against an express contract be-between the parties.”
Maybe approaching the same general thought in a different mode of expression, it is forcibly suggested by Stapling that the “aforesaid patents and the attendant services (the ‘promotional and advertising activities’ referred to in the challenged declaratory judgment action) which are not mentioned specifically in the Agreements, are just as much of a consideration moving *567 from Stapling to the lessees as is the use of the machines on which the boxes are manufactured; ” and cited to this is Sec. 672.2-202, Florida Statutes (Sec. 2-202 of the Uniform Commercial Code), stating that while “terms” of “a writing . may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement”, they may nonetheless be “explained or supplemented[3] (1) By course of dealing or usage of trade (Sec. 671.1-205) or by course of performance (Sec. 672.2-208).” But speaking to a kindred point in pre-Uniform Commercial Code days was the Supreme Court of Florida in Florida Moss Products Co. v. City of Leesburg et al., 1927, 93 Fla. 30, 112 So. 572, 574[4]. What the Court then said is equally germane today, and unaffected by the Code, when, after acknowledging the orthodox parol evidence rule sanctioning testimony dehors the instrument to expose the true consideration involved, the Court cautioned that such a rule of law “does not permit proof of an oral agreement for the purpose of imposing a further contractual obligation on one of the parties, of which there is no indication or suggestion in the written contract . . . It is not permissible, under the guise of proving by pa-rol the consideration of a written contract, to add to or take from the other provisions of the written instrument, nor to modify the operative effect thereof.” This thought was caught up much later in Knabb v. Reconstruction Finance Corporation, 1940, 144 Fla. 110, 197 So. 707, 716 [10, 11]; wherein the Court said, quoting approvingly from a federal case,
“ ‘It is true that for some purposes parol evidence can be introduced to explain or amplify the consideration recited in a written contract; but this exception to the general rule does not permit proof of an oral agreement for the purpose of imposing an affirmative obligation on one of the parties of which there is no indication or suggestion in the written contract. If that were to be permitted on the theory of an inquiry into the consideration of the contract, the rule respecting the finality of written contracts would obviously be abrogated.”
In finality, Stapling reminds us that it and its lessees “did not abandon at the trial level, and do not abandon now, the contention that the State of Florida cannot constitutionally impose a tax upon payments for services rendered outside of Florida”; but, as determined below and approved by us, the challenged tax is not “upon payments for. services”, but for and as rent, pursuant to Chapter 212, Florida Statutes.
Popular feeling has never run riot in favor of any tax. Over a century and a half ago (1820) this little commentary found its way info print over the hand of Sidney Smith, writing in his Review of Seybert’s Annals of the United States :
“The schoolboy whips his taxed top; the beardless youth manages his taxed horse with a taxed bridle on a taxed road; and the dying Englishman, pouring his medicine, which has paid seven per cent, into a spoon that has paid fifteen per cent, flings himself back upon his chintz bed which has paid twenty-two per cent, and expires in the arms of an apothecary who has paid a license of a hundred pounds for the privilege of putting him to death.”
Yet the law is uninfluenced by sentiment or personal preference; and this case must, therefore, be and it is hereby
Affirmed.
RAWLS, C. J. and JOHNSON, J., concur.

. A method which has on occasion been employed by the Supreme Court of Florida itself. See Jackson et al. v. Consolidated Government of the City of Jacksonville, Fla., 1969, 225 So.2d 497, 499.

. “ ^Royalties on use of rented property occupy the same status. Fla. Assn. of Broadcasters v. Kirk, Fla.App., 264 So.2d 437.

. In the instant ease may “terms” of a writing, to-wit, here, the seven services Stapling contends “have been integrated into the agreement”, be “explained or supplemented”, when no advertence to them is ever made in the agreement in the first place? Speaking of “a supplemental Act”, in State v. Healy, Ohio App., 1950, 58 O.L.A. 33, 95 N.E.2d 244, 250, that court explained that “it is that which supplies a deficiency, adds to, or completes, or extends that which is already in existence, without changing or modifying the original.”