609 So.2d 54 (1992)
Bruce F. IDEN, et al., Appellants,
v.
Paul KASDEN, Appellee.
Nos. 91-1933, 91-2476.
District Court of Appeal of Florida, Third District.
October 20, 1992.
Rehearing Denied January 5, 1993.
Thomson, Muraro & Razook and Parker Thomson and Susan Aprill and Karen Williams Kammer, Miami, for appellants.
Joe N. Unger, Miami, S. David Sheffman, Miami Beach, for appellee.
Before NESBITT, FERGUSON and GODERICH, JJ.
NESBITT, Judge.
Allan Milledge and Bruce Iden, attorneys, appeal a money judgment entered against them on a claim of fraudulent misrepresentation in a real estate transaction. Their claim here is the insufficiency of the evidence to support the verdict and judgment. We agree and reverse with directions to grant their motion for directed verdict.
The attorneys represented the Bainbridge Company as purchaser of the Delano Hotel from Paul Kasden, owner and seller. Of the $2.6 million selling price, the seller wanted $200,000 by October 1, 1988. To this end, the sales contract provided Bainbridge would immediately pay to Milledge and Iden $40,000, to be placed in an escrow account. The contract also provided $160,000 "additional deposit to be paid on or before October 1, 1988." Bainbridge placed the $40,000 in escrow. The buyer's *55 concern that the hotel might contain asbestos prompted the parties to the contract to provide for this contingency in the contract. Before the October 1 date, the buyer detected asbestos and, as per provisions in the contract, Kasden elected to cure and remove it. The $160,000 deposit was to be paid to Kasden when inspection proved the asbestos had been removed.
Kasden claims that Milledge and Iden made representations in the course of the subsequent negotiation both prior and during the asbestos removal which led Kasden to believe and rely upon the fact that the $160,000, as well as the original $40,000, was being held in escrow. He claimed that he spent $200,000 in removing the asbestos and that Bainbridge thereafter wrongfully refused to close under the contract.
Kasden sued Bainbridge for contract damages. He also brought this action against Milledge and Iden claiming that they had agreed to escrow the full $200,000 which should have been paid to him upon completion of the asbestos removal. Kasden claims that the attorneys' conduct, chiefly a letter sent to Kasden by Iden, led Kasden to believe and rely upon the assumption that Milledge and Iden were holding the additional $160,000 in escrow.[1] Kasden offered the letter, reproduced in footnote 1, into evidence, together with the testimony of an attorney qualified as an expert in land sales transactions. The contract negotiations between the attorneys and Kasden in the weeks preceding the October 1 date and completion of the asbestos removal, led the expert to conclude that Milledge and Iden were asserting that they had escrowed the full $200,000.
At trial, three issues were submitted to a jury: 1) breach of terms of the escrow agreement; 2) intentional breach of fiduciary duty as to an escrow agent; and 3) fraudulent misrepresentation. The jury returned its verdict for Milledge and Iden on the first two issues, but in favor of Kasden on the third. The trial judge instructed the jury that in the event it found for Kasden on one or more of his claims, the court would enter judgment in Kasden's favor for $160,000 as it subsequently did.
To recover damages for fraud, a claimant must prove (1) the defendant made a false statement of material fact; (2) the defendant knew at the time it was made that such statement was false; (3) the defendant intended the false statement to induce the claimant to act upon it; and (4) the claimant justifiably relied on the false statement resulting in injury to him. Lance v. Wade, 457 So.2d 1008, 1011 (Fla. 1984). The claimant must produce evidence proving each element of the cause of action. As stated in First Interstate Dev. Corp. v. Ablanedo, 511 So.2d 536 (Fla. 1987), intentional misconduct is a necessary element of fraud. To prove fraud, a plaintiff must establish that the defendant made a deliberate and knowing misrepresentation designed to cause, and actually causing detrimental reliance by the plaintiff. Id. at 539.
*56 Thus, the focus of our inquiry is to analyze the contract, exhibits, and testimony to determine if there is any affirmative proof that the attorneys defrauded Kasden into believing they were holding $200,000 in escrow and acting to his detriment upon that belief.
First, looking at the contract, it clearly and distinctly provides that Milledge and Iden were to act as escrow agents for $40,000. Nowhere does the contract state that the remaining $160,000 deposit was to be held in escrow. The contract states:
$40,000.00 deposit to be placed in escrow with Milledge & Iden, as part payment, receipt of which is acknowledge by escrow agent.
$160,000.00 additional deposit to be paid on or before October 1, 1988.
Thus, the clear wording of the contract made no provision for the $160,000 to be placed into escrow. A latter section of the contract mentions the payment of deposits but nowhere states where the funds were to come from or how much deposit money was to come from escrow.
Second, considering the correspondence, Kasden claims that it was Iden's September 30, 1988 "accommodation letter," set forth in full in footnote 1, which led him to believe and rely upon the representation that the additional $160,000 was in escrow. The relevant part provides:
This letter will confirm that I am in receipt of additional funds in connection with the above-noted transaction. These funds were sent to me by the Purchasers in connection with their efforts to reach an accommodation with the Seller regarding the asbestos matter.
That letter in no way informed Kasden that the additional $160,000 was in escrow. Iden did not identify himself as acting in his escrow agent capacity, nor did he state that his client had authorized this additional deposit be placed into escrow. Likewise, none of the correspondence submitted into evidence of the ongoing dialogue which transpired between the parties indicated that appellants held $200,000 in escrow, or were under any obligation to do so.
As to the critical letter, Kasden proved no evidence of falsity whatsoever: he adduced no evidence showing Milledge and Iden did not have "additional funds" from Bainbridge, or that they were not acting "to reach an accommodation" regarding the "asbestos matter." The evidence, in fact, affirmatively demonstrated that at the time the letter was sent, the attorneys were holding checks from their client, Bainbridge.
Finally, considering the testimony, Milledge and Iden testified that they had never told Kasden that the full $200,000 would go into escrow or had in fact gone into the escrow account. Kasden testified that it was his belief from the beginning of negotiations that the full $200,000 was to go into escrow; however, he never claimed that he was told the money was to go into escrow or had in fact gone into escrow. Rather, Kasden claimed only that the September 30 letter led him to believe the full amount was in escrow. There is nothing in that letter upon which a reasonable prudent businessman could conclude that Iden and Milledge were holding any additional funds in escrow. Kasden's expert testified that land sale deposits commonly go into escrow accounts prior to closing and thus, the critical letter led him to believe the full $200,000 was in escrow. However, on cross-examination, he admitted that the contract itself made no such provision. The expert's testimony was based chiefly upon custom of the real estate trade, and while custom or usage may be employed in explanation and qualification of terms of a contract that would otherwise be ambiguous, it cannot operate to contravene express instructions or to contradict an express contract to the contrary. See MacGregor v. Hosack, 58 So.2d 513 (Fla. 1952); Stapling Machs. Co. v. Kirk, 298 So.2d 564 (Fla. 1st DCA 1974).
Thus, by way of recapitulation, it is clear that under the terms of the controlling contract, Milledge and Iden were to hold $40,000 in escrow. The additional $160,000 that came into their hands was never required by contract to go into escrow. Correspondence in no way indicates *57 these funds went into escrow or in fact that Bainbridge had authorized that amount be paid into escrow. Kasden's impressions and assumptions, however sincerely felt, cannot support a finding of fraudulent conduct when there was no reasonable basis for his assumption. One's expectation is considerably different from what reasonably prudent businessmen may rely upon.
As a result, there were simply no foundation facts upon which Kasden's expert's opinion could be based. Consequently, there is no reason to consider that testimony. Peterson v. Georgia-Pacific Corp., 510 So.2d 1015 (Fla. 1st DCA 1987); Braddock v. School Bd. of Nassau County, 455 So.2d 394 (Fla. 1st DCA 1984); Monsalvatge & Co. v. Ryder Leasing, Inc., 151 So.2d 453 (Fla. 3d DCA 1963); see also Arkin Constr. Co. v. Simpkins, 99 So.2d 557 (Fla. 1957) (expert witness' opinion based on facts or inferences not supported by evidence has no evidentiary value; the opinion cannot constitute proof of the existence of facts necessary to support the opinion).
Looking at the contract, the exhibits, and the testimony, we conclude the trial court should have granted Milledge and Iden's motion for directed verdict. There was no evidence upon which a jury could have lawfully found for the non-moving party, Kasden. See Maguire v. American Family Life Assur. Co., 442 So.2d 321 (Fla. 3d DCA 1983), review denied, 451 So.2d 849 (Fla. 1984). Kasden simply failed to prove Milledge and Iden had made a deliberate and knowing misrepresentation, designed to cause, and actually causing Kasden's detrimental reliance. See First Interstate Dev. Corp., 511 So.2d at 539.
Accordingly, the judgment is reversed with directions to grant the defendants' motion for directed verdict. Also, we reverse the post-judgment orders allowing prejudgment interest and costs.
Reversed and remanded.
NOTES
[1] The letter in full stated:

Re: Kasden Sale to Bainbridge Street Corporation Contract for Sale and Purchase dated 7-21-88
Dear Bob:
Thank you for your letter of September 7, 1988. This letter will confirm that I am in receipt of additional funds in connection with the above-noted transaction. These funds were sent to me by the Purchasers in connection with their efforts to reach an accommodation with the Seller regarding the asbestos matter.
With regard to the release of this deposit, please refer to paragraph 32(c) of the above-referenced Contract. The deposit will not be released until such time as the curative acts have been completed by the Seller and verified by the Purchasers.
I am aware of discussions between our clients with regard to the early disbursement of the funds currently on deposit. Please contact me upon receipt of this correspondence so that we may continue these discussions.
Please be further advised that the above-referenced Contract is binding on the Seller and any actions to offer the subject property to others for sale or purchase would constitute a breach of the contract and would be harmful and result in damages to the Purchasers. Please advise the Seller to cease and desist any efforts or actions to offer the subject property to others.
Thank you very much for your attention to this matter.
 Sincerely,
 /s/ Bruce F. Iden
 Bruce F. Iden