756 So.2d 151 (2000)
Latimer C. FARR, III, Appellant/Cross-Appellee,
v.
POE & BROWN, INC., a Florida corporation, and Farr Insurance, Inc., a Florida corporation, Appellees/Cross-Appellants.
No. 4D98-2120.
District Court of Appeal of Florida, Fourth District.
March 15, 2000.
William H. Pruitt of Sned, Pruitt, D'Angio & Tucker, P.A., West Palm Beach, for appellant/cross-appellee.
Thomas M. Bates, West Palm Beach, for appellees/cross-appellants.
STEVENSON, J.
Appellant, Latimer C. Farr, III, had been employed as a "producer"or salesman by Poe & Brown, Inc., an insurance agency. When Farr left the company, Poe & Brown brought suit to collect from Farr unpaid premiums for several of his former clients. The trial court ruled that Farr was personally liable for these uncollected premiums, and after applying a number of set-offs, entered judgment against Farr in excess of $35,000. We agree with Farr's contention that the trial court's finding of personal liability is contrary to the express provisions of the employment agreement and, thus, we reverse. Our holding renders Poe & Brown's cross-appeal contesting the amount of the breach of contract damages moot.[1]
The relevant portions of the employment agreement provided as follows:
EMPLOYMENT AGREEMENT
4. COMPENSATION.
. . . .
(b) Your compensation is to be based on commissions generated from insurance policies produced by you. The amount of commissions Farr receives is based on premiums paid to the insurance companies. Therefore, *152 your compensation is predicated on collection of premiums and your compensation will be reduced by a charge for bad debts and bad debt reserves.
(c) If you cease to be employed by us, for any reason, you authorize us to offset against any compensation, by salary or commission, which we would otherwise owe or pay you, all amounts which you owe us because of overdraws, borrowings from us, or for any other reason, and to offset such amounts, even though your payment to us would otherwise not by then be due.
(d) You specifically authorize us to withhold from your compensation, by salary or commission, any amounts we, in reasonable good faith, dispute as to whether the amount is owed, until the dispute is resolved....
(e) If you cease to be employed by us, and you are working on a commission basis, within that period we will pay you that part of your commission income then subject to final determination, and will pay you any remaining balance thereafter.... If the final determination is that you owe us, you are to pay us that amount within ten (10) days after we furnish you with that information.
Poe & Brown company policy is to cancel an insurance policy if the client has not paid the premium after sixty days. If the agent does not wish to have his customer's insurance canceled, however, the agent may sign what is known as a "Receivables Exception Form." The form provided as follows:
I [name of agent] do not wish the above named account to be cancelled in accordance with standard Poe & Brown policy and procedures. In order to keep this account active I hereby authorize the above amount to be deducted from my commission statement for this month. At such time as payment is received from the client the same amount will be added back to my commission statement in that month.
Farr signed a number of these forms prior to the cessation of his employment with Poe & Brown.
When Farr left his employment with Poe & Brown in August of 1993, his clients owed in excess of $90,000 in unpaid premiums. In December of 1994, the agency sued Farr, claiming that he had breached his employment agreement by failing to collect these unpaid premiums and was personally liable for these amounts. At trial, expert testimony was presented establishing that "receivables exception" forms are common in the industry and that, by signing such a form, the producer or salesman becomes "the guarantor of those funds to the agency." Additionally, the insurance industry expert testified that it was customary for insurance agencies to sue producers after the termination of their employment for outstanding receivables.
Despite the fact that the receivables exception form actually signed by Farr authorized only a deduction "from my commission statement for this month," the trial judge, relying upon the testimony concerning industry custom, held that Farr had become the guarantor of those debts. We hold that, in so doing, the trial court improperly used evidence of industry custom to alter the terms of a plain and unambiguous agreement.
The role of custom and usage in interpreting contracts is well settled.
[T]he law as we understand it is that "common usage may be resorted to clear up and make definite that which is doubtful or uncertain but it will not be employed to vary or contradict that which the parties have set down and agreed to in no uncertain terms. If the terms of the contract are clear and certain, they will not be disturbed by usage no matter how well settled it will be nor will usage be permitted to read express terms from the contract." ... "`[C]ustom *153 and usage' cannot prevail as against an express contract between the parties."
Stapling Machines Co. v. Kirk, 298 So.2d 564, 566 (Fla. 1st DCA 1974) (citations omitted); see also Indian Harbor Citrus, Inc. v. Poppell, 658 So.2d 605, 606 (Fla. 4th DCA)("`[W]hile custom or usage may be employed in explanation and qualification of terms of a contract that would otherwise be ambiguous, it cannot operate to contravene express instructions or to contradict an express contract to the contrary.'") (quoting Iden v. Kasden, 609 So.2d 54, 56 (Fla. 3d DCA 1992)), review denied, 666 So.2d 144 (Fla.1995).
Both the employment agreement and the receivables exception form speak in terms of reducing the producer's compensation. Specifically, the employment agreement states, "Therefore, your compensation... will be reduced by a charge for bad debts" and authorizes Poe & Brown to "offset against any compensation" amounts that the employee owes. Similarly, the receivables exception form states that, in exchange for the agency not canceling the producer's customer's insurance, the producer agrees to allow the agency to deduct from his commission the stated amount of the uncollected premium. To add a term making Farr a guarantor of the debt would be to use industry custom to contravene the express terms of the parties' agreementa result that is clearly improper. Accordingly, we reverse the judgment entered against Farr.
FARMER and KLEIN, JJ., concur.
NOTES
[1] Poe & Brown also sued Farr for amounts that it claimed Farr owed it pursuant to a 1992 promissory note which Farr signed when the agency purchased his father's agency, Farr Insurance. The trial court found in favor of Farr on this claim, and Poe & Brown has cross-appealed that portion of the judgment. We find no merit in the claims raised and affirm.