RAMIREZ, J.
Thomas J. Flood appeals to this Court the trial court’s Final Judgment in favor of appellee Union Planters Bank of Florida. Because we find that the trial court did not abuse its discretion in finding that comparable substitute benefits were offered to Flood following the merger of Union Planters, we, affirm. We further affirm the judgment on Union Planters’ counterclaim, finding that Flood must pay the amount owed on the promissory note to Union Planters, together with the accrued default interest rate.
Flood began working for Capital Bank as a vice-president in 1978. At the time he terminated his Employment Agreement, Flood was the Executive Vice-President *409 and Chief Retail Banking Officer of Union Planters, the successor to Capital Bank.
On June 11, 199.6, Flood entered into an Employment Agreement with Capital Bank which was effective January 1, 1996 through May 31, 1998. The Agreement was amended on November 21, 1996 and again on March 27, 1997. Section 5.6 of the Agreement allowed Flood to terminate his Agreement and receive a severance benefit upon a “Change in Control” at Capital Bank and the occurrence of one of the conditions precedent set forth in section 5.6(a) of the Agreement. In pertinent part, section 5.6(a) provides:
In the event that a Change in Control ... in the Company shall occur during the Initial Term, and within one year after the date of the Change in Control, (i), the Executives Base Salary in effect immediately prior to the Change in Control is reduced or (ii) the Executive is (x) assigned any position, duties, or responsibilities that are significantly diminished or changed when compared with the position, duties or responsibilities of the Executive prior to such Change in Control, (y) forced to relocate to another location more than 25 miles from his location prior to the Change in Control, or (z) no longer provided coverage under benefit programs in existence prior to the Change in Control (unless a comparable substitute is offered); then the Executive, by written notice to the Company at any time within the thirty (30) day period following the occurrence of an event described in clauses (i) and (ii) of this Section 5.6(a), shall have the right to terminate his employment hereunder. (emphasis in original).
The Employment Agreement also referenced a loan for $50,000.00 to be made by Capital Bank to Flood, as evidenced by a promissory note dated January 1, 1996. The Agreement further provided that in the event Flood terminated his employment pursuant to the Change in Control provisions of the Agreement, Flood would not be required to repay that portion of the loan equal to the outstanding principal and accrued interest.
On August 12, 1997, Union Planters and Capital Bank entered into a Merger Agreement, whereby Union Planters would acquire Capital Bank and its subsidiaries. The “Change in Control” took place when the merger closed and when Union Planters acquired Capital Bank, on December 31, 1997. Paragraph 8.11(a) of the Merger Agreement provided that Union Planters was required to provide to Capital Bank employees benefits which when' taken as a whole were substantially similar to those provided at the time to Union Planters’ own employees. As a Capital Bank shareholder, Flood voted to approve the merger with Union Planters.
During the latter part of 1997, Flood participated in several meetings with other Capital Bank senior executives to discuss the merger and to evaluate the comparability of the benefits to be provided to Capital Bank employees by Union Planters. Flood received and discussed with other executives the Benefits Comparison for Capital Bank, the Merger Agreement and the Prospectus and Proxy Statement. Also in the latter part of 1997, Flood interviewed for, but did not obtain, the position as CEO of Union Planters’ South Florida division.
Flood terminated his employment on January 27, 1998. He then sued Union Planters for breach of contract and slander of credit and alleged that his termination was pursuant to section 5.6(a)(ii)(z) of the Employment Agreement, which allowed termination if the executive was no longer provided coverage under benefit programs in existence prior to the Change in Control, unless a comparable substitute was *410 offered. Union Planters counterclaimed, alleging that Flood failed to pay on the $50,000 promissory note.
A non-jury trial was held before the trial court. Jerry Reiss, an actuary, testified as Floods expert witness. Union Planters presented the testimony of Ellen Hennessy, its expert witness. Both expert witnesses testified on the evaluation of comparability of benefits.
The trial court found Hennessy’s expert testimony superior and more persuasive than Reiss’ testimony. The court made extensive findings in its eleven-page final judgment.
The trial court ordered that final judgment be entered in favor of Union Planters and against Flood on all counts of the complaint and counterclaim. The court further ordered that Union Planters was entitled to recover from Flood $42,299.50, with accrued interest, for Union Planters’ claim on the promissory note. The trial court also awarded Union Planters attorneys’ fees and costs. While we agree with Flood’s contentions that because Union Planters unilaterally drafted the Employment Agreement, ambiguities in the contractual document should be construed against Union Planters, the trial court’s findings and conclusions were nevertheless correct.
To begin, the trial court’s findings of fact come to this court “clothed with a presumption of correctness.” See Gergora v. Goldstein Prof'l Ass’n Defined Benefits Pension Plan & Trust, 500 So.2d 695, 697 (Fla. 3d DCA 1987). The credibility determinations made by the trial court are also reviewed under the abuse of discretion standard, due to the superior vantage point the trial court has in seeing and hearing the expert witnesses presenting the conflicting testimony. See Shaw v. Shaw, 334 So.2d 13 (Fla.1976).
a. Flood’s Claim for Severance.
We agree with Union Planters that the trial court did not abuse its discretion in finding that comparable substitute benefits were offered to Flood following the merger. There was competent substantial evidence to support the trial court’s determination that when taken as a whole, there was a comparable substitute benefits plan offered to Flood.
First, the trial court evaluated conflicting expert testimony to determine that Union Planters offered benefit programs that were a comparable substitute for those benefits previously offered by Capital Bank before the merger. The trial court adopted Union Planters’ expert’s testimony that the two benefit plans in question should be evaluated on the basis of the benefits package as a whole, rather than on a benefit by benefit basis.
The court further found Floods expert’s testimony less credible than that of Union Planter’s expert because Flood’s expert made assumptions that the trial court found were not credible. This was a proper determination well within the trial court’s discretion. See Iden v. Kasden, 609 So.2d 54, 57 (Fla. 3d DCA 1992).
Second, the term “comparable substitute” in the Employment Agreement is not ambiguous, as Flood contends. The absence of a definition for this term in the Employment Agreement does not mean that the term is ambiguous. See State Farm, Fire & Cas. Co. v. CTC Dev. Corp., 720 So.2d 1072, 1076 (Fla.1998). Furthermore, just because a provision may be complex and needs to be analyzed in order to be applied does not mean that it is ambiguous. See Swire Pac. Holdings, Inc. v. Zurich Ins. Co., 845 So.2d 161, 165 (Fla.2003).
*411 Simply because there was a difference of opinion between the experts about the comparable substitute benefits does not mean that the phrase “comparable substitute” itself is ambiguous. The judge heard the experts and made credibility determinations against Flood. The court based its findings on substantial competent evidence, the testimony of Union Planters’ expert, that there was comparable substitute, as required by the Agreement. As such, no ambiguity exists and no rules of construction were necessary to be applied against Union Planters, the drafter of the Employment Agreement. The trial court therefore determined that no severance payment was owed by Union Planters to Flood because the conditions precedent to severance had not been met when Flood terminated his Employment Agreement. Thus, because there was competent substantial evidence to support the trial court’s final judgment and no abuse of discretion has been demonstrated by Flood, the trial court’s judgment is affirmed on this issue. See Location 100, Inc. v. Gould S.E.L. Computer Sys., Inc., 517 So.2d 700, 705 (Fla. 4th DCA 1987).
b. Union Planters’ Counterclaim for Repayment of Principal and Interest.
We also agree with Union Planters and find there is competent, substantial evidence in the record to support the trial courts finding that Flood must pay the amount owed to Union Planters on the promissory note, together with the accrued default interest rate. Because Flood did not terminate his employment pursuant to the Change in Control provisions of his Employment Agreement, the $50,000 loan is not forgiven and Flood is required to repay the loan plus accrued interest. Thus, the judgment in favor of Union Planters on its counterclaim is also affirmed.
c. Conclusion.
In sum, the trial court did not abuse its discretion in finding that comparable substitute benefits were offered to Flood following the merger and that Flood was required to repay the outstanding loan due to Union Planters. The trial court’s eleven-page, clear and concise final judgment relied on competent substantial evidence to support its determinations. We therefore affirm the final judgment under review.
Affirmed.