IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

DON FACCIOBENE, INC.,

      Appellant/Cross-Appellee,

 v.                                   Case Nos.  5D15-1527

HOUGH ROOFING, INC., AND DIGIACINTO
HOLDINGS, LLC,

      Appellees/Cross-Appellants.

_____/

Opinion filed July 21, 2017

Appeal from the Circuit Court
for Brevard County,
Charles M. Holcomb, Judge.

Allan P. Whitehead, of Frese, Hansen,
Anderson, Anderson, Heuston &
Whitehead, P.A., Melbourne, for
Appellant/Cross-Appellee.

Ruth C. Rhodes, of Rhodes Law, P.A.,
Melbourne, for Appellee/Cross-Appellant,
Hough Roofing, Inc.

No Appearance for Digiacinto Holdings,
LLC.

BERGER, J.

      Don Facciobene, Inc. (DFI), a licensed general contractor, and its subcontractor,

Hough Roofing, Inc. (HRI), appeal the amended final judgment entered by the trial court

on HRI's breach of contract claim and DFI's counterclaim after a non-jury trial.  DFI

asserts, inter alia, that the trial court erred in finding that its subcontract with HRI did not apply retroactively and that, consequently, HRI was barred from receiving any payment at all due to noncompliance with the conditions precedent to progress payments and final payment in section 8 of the subcontract. HRI filed a cross-appeal seeking, inter alia, payment for the full value of its subcontract.[1] We agree with DFI that the trial court erred in failing to apply the subcontract retroactively. However, we find no merit in DFI's argument that HRI was barred from receiving payment for failing to comply with conditions precedent. To the contrary, we agree with HRI on its cross-appeal and conclude it was entitled to the full value of its subcontract, minus certain setoffs. Accordingly, we reverse the amended final judgment.

In late 2010, DFI contracted with Digiacinto Holdings, LLC, (Owner) to perform various renovations to a house in Melbourne, Florida, known locally as the Nannie Lee House or the Strawberry Mansion (Mansion), as part of Owner's preparations to open a restaurant on the premises. The Mansion, erected in 1905, needed a new roof. As general contractors are not permitted to place a new roof on an existing structure, DFI subcontracted the roofing work to HRI, a licensed roofing subcontractor. HRI provided an estimate and proposed statement of work to DFI in mid-March 2011. DFI's project manager, Jim Monarchy, signed HRI's proposal on April 5, 2011, as well as an additional expanded proposal on April 11, 2011. The proposals stated that payment was due on completion. HRI began work on the roof on April 15, 2011. However, the parties did not

---

[1] In a separate appeal, HRI challenged the trial court's order denying its motion for attorney's fees for the trial proceedings. DFI filed a cross-appeal claiming that it was entitled to attorney's fees. Hough Roofing, Inc. v. Don Facciobene, Inc., No. 5D15-2878 (Fla. 5th DCA July 21, 2017).

actually sign the subcontract until June 8, 2011, and, by that time, the project was nearly complete. The subcontract price was $21,051.

Under section 8 of the subcontract, HRI was due progress payments, minus a ten percent retainage, for work completed in a particular month on the twentieth day of the following month. Final payment was not due until thirty days after the completion of the entire renovation. Monarchy testified that the final payment amounted to the payment of the accrued ten percent retainage. Section 8 of the subcontract also imposed several conditions precedent to progress payments and final payments. For progress payments, DFI had to (1) receive payment from Owner for HRI's work that was due for the progress payment and (2) HRI had to provide, upon request from DFI, a sworn statement listing the parties who furnished labor and materials to HRI with their names and addresses and documentation showing that HRI paid them. The conditions precedent to final payment included the conditions precedent for progress payments and additional requirements that HRI's work was at least ninety-eight percent complete and that HRI submit unspecified closeout documents to DFI for approval and provide a final lien waiver and release to DFI.

HRI had mostly finished its work by the end of May 2011, and on June 8, 2011, it submitted its first "final" invoice for $22,370.[2] Due to disputes over some of HRI's charges,[3] DFI never paid HRI anything for its work on the Mansion even though it received

---

[2] This amount included $10,720 for metal roofing panels, $4100 for plywood sheathing, $3590 for the flat roof and base sheet, $2635 for thirty-one pitch pockets, $275 for eleven torch patches, and $1050 for Owner requested items.

[3] DFI disputed the $3590 charge for the flat roof and base sheet, seeking a credit reducing the charge to $2333.50, the eleven torch patches and the owner requested items. DFI also sought a credit for HRI's use of DFI's crane. On August 15, 2011, HRI amended its invoice to grant DFI credits of $1440 for the crane rental and $290 for the flat roof and base sheet installation. HRI also removed the owner requested items. These changes reduced HRI's invoice to $19,590.

3

payment for HRI's work from Owner on July 15, 2011, final payment for the entire project from owner on December 21, 2011, and concluded the renovations on December 30, 2011.[4]  As a result, a claim of lien was filed against the property,[5] and on December 6, 2011, HRI filed its complaint for breach of contract against DFI and Owner.  On December 27, 2011, DFI notified HRI that Owner had discovered a leak in the roof.[6]  Despite this, Owner refused to give HRI permission to come onto the premises and repair the leak until May 2012.  Consequently, DFI undertook repairing the roof, without a roofing license, and filed a counterclaim seeking damages for the estimated cost of repairing the leak. DFI also answered HRI's breach of contract claim by asserting, as an affirmative defense, noncompliance with unspecified conditions precedent.

The case proceeded to trial, at which both parties presented expert witness testimony concerning the leak.  DFI's expert, Luke Miorelli,[7] testified that while most of the roof was installed correctly, there were potential problems with the roof installation on the south and west dormers and estimated repairs would cost $7378.80.  HRI's expert, Joseph Horschel,[8] testified that only the portion of the roof with the active leak needed to

---

[4] DFI's notice of termination of renovations stated that it had paid all of its subcontractors in full.

[5] DFI transferred the lien from the property by posting bond.  The bond cost DFI $750.  Alan Hough, owner of HRI, canceled the lien in December 2011.

[6] Owner first reported the leak to DFI in July 2011, but Monarchy was instructed by the owner of DFI not to mention the leak to HRI.

[7] Miorelli is a licensed general contractor who designs and sometimes installs roofs but he is not certified or licensed in roofing.

[8] Horschel is a licensed general contractor who also holds a roofing license.

4

be redone and estimated that the issue could be fixed by two laborers working about six hours each.

On April 7, 2015, the trial court issued its amended final judgment.[9] It found that both parties did not sign the subcontract until June 8, 2011, and that by that point, HRI's performance was more than ninety percent complete. The trial court determined that "to retroactively apply the language to the work performed prior to the Contract being fully executed is not required since the total work called for by the Contract was substantially performed prior to the written Contract being signed." The trial court ruled that DFI breached the implied covenant of good faith and fair dealing by cutting off communications with HRI and deciding not to pay HRI in late June 2011. For damages, the trial court awarded HRI the uncontested charges of $10,720 for the metal roofing panels, $4100 for the plywood sheathing, $2635 for the thirty-one pitch pockets, and $2333.50 for the flat roof and base sheet. After offsetting the $1440 HRI owed DFI for the crane rental and the ten percent retainage of $1978.85, the trial court ruled that DFI should have paid HRI $16,369.65 in July 2011. The trial court further found that DFI could not recover on the unlicensed repair work it performed on the roof and that its expert's testimony was not credible on the cost to repair the leak. The trial court found that HRI's expert's testimony was credible on that point and awarded DFI only $180 on the counterclaim based on six hours of labor by two workers being paid $15 per hour. It also awarded DFI an offset for the $750 cost of bonding the lien off the property resulting in a $15,439.65 award in favor of HRI plus postjudgment interest. The trial court further ruled

---

[9] After issuing the final judgment, the trial court granted DFI's motion for reconsideration, in part, and amended the final judgment.

that HRI was barred from recovering the balance of the contract price because it did not comply with the conditions precedent to final payment.

We find multiple errors in the amended final judgment that warrant reversal. First, the trial court's decision not to apply the subcontract retroactively was error in light of the merger clause found in section 18 of the subcontract. The merger clause requires retroactive application because it acts to replace the original contract with the new one. See Katz v. Fifield Realty Corp., 746 F. Supp. 2d 1265, 1269 (S.D. Fla. 2010); Aly Handbags, Inc. v. Rosenfeld, 334 So. 2d 124, 126 (Fla. 3d DCA 1976) ("The well established rule of law is that a contract may be discharged or extinguished by merger into a later contract entered into between the parties in respect to the same subject which replaces the original contract." (citing 7 Fla. Jur. Contracts § 166 (1956))). Here, failing to apply the subcontract retroactively resulted in HRI being barred by the conditions precedent from collecting the final payment but not being barred from receiving a progress payment[10] for work performed before the subcontract was executed.

DFI asserts that applying the subcontract retroactively will bar HRI from receiving any payment at all due to HRI's failure to comply with the conditions precedent. We disagree. The fact that the subcontract applies retroactively does not mean that HRI is barred from receiving payment by the conditions precedent to progress payments and final payment in section 8 of the subcontract. In its complaint, HRI alleged that it had

_____

[10] DFI's argument that HRI did not request a progress payment in its complaint ignores the fact that the testimony during the trial established that the final payment consists of the ten percent retainage while the remaining ninety percent would normally be disbursed as progress payments. HRI attached a copy of its August 15, 2011 final invoice to its complaint, in which it requested full payment, thus implicitly requesting both the progress payment and final payment. This attachment is part of the complaint for all purposes. Fla. R. Civ. P. 1.130(b).

6

"fully performed all of its obligations under the Contract or has been excused from performance." In its amended answer, DFI asserted, as an affirmative defense, that HRI "has failed to allege, nor can it establish that it had meet [sic] each and every condition precedent to recovering payment in this cause pursuant to its Complaint." Contrary to the requirements in Florida Rule of Civil Procedure 1.120(c), DFI did not specify which conditions precedents HRI did not comply with or how HRI failed to comply with them. Consequently, DFI's answer to the complaint failed to preserve its right to demand proof that HRI complied with the conditions precedent to progress payments and final payment.[11] See Fla. R. Civ. P. 1.120(c); Deutsche Bank Nat'l Tr. Co. v. Quinion, 198 So. 3d 701, 703-04 (Fla. 2d DCA 2016) ("[T]o construct a proper denial under the rule, a defendant must, at a minimum, identify both the nature of the condition precedent and the nature of the alleged noncompliance or nonoccurrence."); Bank of Am., Nat'l Ass'n v. Asbury, 165 So. 3d 808, 810-11 (Fla. 2d DCA 2015); Cooke v. Ins. Co. of N. Am., 652 So. 2d 1154, 1156 (Fla. 2d DCA 1995); Paulk v. Peyton, 648 So. 2d 772, 774 (Fla. 1st DCA 1994).

Second, while awarding HRI the uncontested charges of $10,720 for the metal roofing panels, $4100 for the plywood sheathing, and $2635 for the thirty-one pitch pockets was appropriate, the trial court should have also awarded HRI the ten percent retainage, $2600 out of the $3590 charged for the flat roof and base sheet installation,[12]

---

[11] We take no position on the parties' other arguments regarding the conditions precedent to progress payments and final payment.

[12] The record indicates that DFI acted, albeit wrongfully, under section 5 of the subcontract when it installed the flat roof base sheet without informing HRI. Any wrongful termination under section 5 is, pursuant to paragraph L, construed as a termination for the convenience of the general contractor. When this happens, paragraph L states that HRI is entitled only to compensation "for the reasonable cost of, and a reasonable

7

and $275 for the eleven torch patches.[13]  Moreover, because this case involves liquidated

damages, the trial court also erred in failing to award prejudgment interest from July 20,

2011, for the progress payment and January 29, 2012, for the final payment.  See

Argonaut Ins. Co. v. May Plumbing Co., 474 So. 2d 212, 214-15 (Fla. 1985); Metro. Dade

Cty. v. Bouterse, Perez & Fabregas Architects Planners, Inc., 463 So. 2d 526, 527 (Fla.

3d DCA 1985) (citing Jockey Club, Inc. v. Bleemer, Levine & Assocs. Architects &

Designers, Inc., 413 So. 2d 433, 434 (Fla. 3d DCA 1982)).  Finally, although the trial court

was correct in offsetting the award by $1440 for the crane rental, and $180 for DFI's

counterclaim,[14] it erred in including an offset for the $750 cost DFI incurred in bonding off

Hough's lien.  DFI did not request the $750 in bond costs as relief.  Therefore, the trial

court erred in granting relief outside the pleadings.  See Wachovia Mortg. Corp. v. Posti,

166 So. 3d 944, 945 (Fla. 4th DCA 2015) (citing S. Indus. Tire, Inc. v. Chicago Indus.

Tire, Inc., 541 So. 2d 790, 791 (Fla. 4th DCA 1989)); Bank of N.Y. Mellon v. Reyes, 126

So. 3d 304, 309 (Fla. 3d DCA 2013); Cardinal Inv. Grp., Inc. v. Giles, 813 So. 2d 262,

263 (Fla. 4th DCA 2012) (citing Pond v. McKnight, 339 So. 2d 1149 (Fla. 2d DCA 1976)).

---

overhead and profit on, the acceptable work performed and/or materials furnished . . . ."
Hough testified that his costs, overhead, and profit for the work performed on the flat roof
and base sheet amounted to $2600.

[13] The testimony at trial indicates that the eleven torch patches were necessary to
conform the work to the contract plans and specifications and did not constitute an
alteration or addition to the contract.  See Acq. Corp. of Am. v. Am. Cast Iron Pipe Co.,
543 So. 2d 878, 880 (Fla. 4th DCA 1989) (citing City of Miami v. Nat Harrison Assocs.,
313 So. 2d 99, 100 (Fla. 3d 1975)).

[14] We affirm the trial court's factual findings on the counterclaim and its credibility
determinations as to the expert witnesses as they were supported by competent,
substantial evidence.  See Flood v. Union Planters Bank, 878 So. 2d 407, 411 (Fla. 3d
DCA 2004) (citing Iden v. Kasden, 609 So. 2d 54, 57 (Fla. 3d DCA 1992)); Ross v. J.E.
Hill Contractors, 410 So. 2d 638 (Fla. 1st DCA 1982).

In total, HRI was owed $20,330, including retainage, before the offsets. Ninety percent of the total, $18,297, was due on July 20, 2011. The ten percent retainage, $2033, minus the $1440 offset for the use of DFI's crane and the $180 counterclaim results in a $413 final payment, which was due to HRI on January 29, 2012.[15] In total, HRI was due $18,710 plus prejudgment interest running from the date specified above.

For the foregoing reasons, we reverse the amended final judgment and remand for entry of a final judgment consistent with this opinion.

REVERSED AND REMANDED.

WALLIS and LAMBERT, JJ., concur.

---

[15] Final payment was due thirty days after the renovations were completed.

9